David O. Boehm, J.
On November 10, 1969 a search warrant was issued by Judge James F. Sheehan of the City Court of Rochester authorizing the search of a ground floor apartment located on premises at 5 Mt. Pleasant Park in the City of Rochester, for dangerous drugs. The underlying affidavit upon which the search warrant was based was sworn to by Detective Joseph Perticone of the Rochester Police Bureau before Judge Sheehan. Attached to Detective Perticone’s affidavit is the affidavit of one *875 Ocie Sparrow, sworn to before a Clerk of the Bochester City Court, reciting that on November 10, 1969 he entered the Mi Pleasant Park premises without permission, looking for things to take, and found in a dresser drawer two bags, a paper bag containing greenish leaves and seeds and a plastic bag containing greenish leaves and seeds.
On November 10, 1969 a search of the Mi Pleasant Park premises was conducted by the police and the defendants were arrested and subsequently indicted, charged with the crime of criminal possession of a dangerous drug in the third degree in violation of section 220.20 of the Penal Law of the State of New York.
Following the procedure directed in People v. Gray (61 Misc 2d 769), the defendants brought a motion to contravene the search warrant under sections 807 to 809 of the Code of Criminal Procedure before Judge Sheehan as the issuing Magistrate. After a hearing, he granted an order vacating the search warrant for lack of probable cause, holding that the affidavit of the police officer ‘ ‘ failed to show his reliability and failed to state reliability and failed to show it in any respect, therefore, the Search Warrant is vacated. ’ ’ (Aguilar v. Texas, 378 U. S. 108; Spinelli v. United States, 393 U. S. 410.)
The People have appealed from the order of vacatur and the statement required by section 518-a of the code has been filed. A motion to suppress, brought under section 813-c of the code, based upon the order of Judge Sheehan, is pending" before this court but has been adjourned until the determination of the appeal.
In opposition, the defendants have raised a number of procedural questions, particularly the right of the People to appeal from such an order. The right of the People to appeal is enumerated in section 518 of the code and subdivision 6 thereof specifically authorizes an appeal from a section 813-c order. It is silent, however, with respect to section 809, and the defendants raise the absence of such legislative language as a procedural bar to the People’s appeal.
The People argue that an appeal from a section 809 order is, however, clearly contemplated by the code because section 809, like section 813-c, provides for the return of seized property. Since both sections involve identical relief for the defendants and the identical evidentiary inhibition against the People, denying an appeal as to one (§ 809), where it is permitted as to another (;§ 813-c), admittedly results in what appears to be virtually a psychedelic distortion of logic. So the People *876 argue, and I agree, but unfortunately the appellate process is a creature of legislation, not logic.
It is by now doctrinal that the right to appeal is not embedded in the due process clause or otherwise constitutionally guaranteed. The right exists solely by statutory authorization and only to the extent of such authorization. (See Cohen and Karger, Powers of the New York Court of Appeals [rev. ed.], § 188, pp. 706-707; Paperno and Goldstein, Criminal Procedure in New York [1960], § 406, pp. 663-666.)
As stated by one of the early Court of Appeals cases on the point, “The appellate jurisdiction of the courts of this state in criminal cases is purely statutory; and, of course, such jurisdiction can never be assumed, unless a statute can be found which expressly sanctions its exercise.” (People v. Zerillo, 200 N. Y. 443, 446.)
This has concedely resulted in more than one “ remarkable situation ” (People v. Reed, 276 N. Y. 5, 12) necessitating ad hoc remedial legislation.
For example, although a court has inherent power to vacate its own prior judgment because it involves a violation of a defendant’s constitutional rights (Matter of Lyons v. Goldstein, 290 N. Y. 19), the same built-in power does not exist as to an appeal from a denial of such a post-judgment application. (People v. Gersewitz, 294 N. Y. 163, citing People v. Zerillo, 200 N. Y. 443.)
After pointing out that the right to appeal is included in that nonconstitutional area where the Legislature may grant or withhold authority from the courts in criminal cases, the Court of Appeals in Gersewitz (supra) rebuffed the request that it judicially fill in the legislative void. 1 ‘ Argument that the omission of the Legislature to provide for an appeal from such an order was inadvertent and that the omission should be supplied may be persuasive; but such arguments must be addressed to the Legislature. The court has no power to supply even an inadvertent omission of the Legislature.” (294 N. Y. 163, 169.)
The Legislature, upon a recommendation from the Judicial Council, responded by enacting the necessary amendments. (L. 1947, ch. 706, amdg. Code Crim. Pro., §§ 517, 518 and 519, and N. Y. City Crim. Cts. Act, § 36; see 14th Annual Report of N. Y. Judicial Council, p. 25.)
Even before Gersewits, the Court of Appeals had already pointed out a similar serious omission which precluded the People from appealing the granting of an order granted at *877 the close of the case which dismissed an indictment for legal insufficiency (People v. Reed, 276 N. Y. 5, supra). That the legislative failure to provide for appeal had no ascertainable purpose was clearly recognized by the court.
“ Our procedure presents this remarkable situation: If a judge dismisses the indictment on motion, before a jury is called, there is no way to review his determination unless we stretch a point and say that such a motion amounts to a demurrer and is in writing when the clerk enters the motion in his minutes. Courts should not be forced to this artificial interpretation, (p. 12).
“ The right to appeal should not be left to inference or doubtful interpretation.” (p. 14).
The illogic of the situation was commented upon in People v. Marra (13 N Y 2d 18, 20) by then Judge (now Chief Judge) Fuld; and again, urged by the Judicial Council, legislative correction was obtained.
There are a multitude of other areas where the absence of explicit legislative authority compelled the rejection of an appeal by the People; viz., from orders granting inspection of Grand Jury minutes (People v. Moreli, 11 A D 2d 437); an application for writ of error coram nobis (People v. Monahan, 21 A D 2d 748); inspection of documents in possession of the District Attorney (People ex rel. Lemon v. Supreme Ct., 245 N. Y. 24); removal of proceedings from one court to another court (People v. Fay, 268 App. Div. 135); severance of trials of codefendants (People ex rel. Singer v. Rogers, 254 App. Div. 865); permission to withdraw a not guilty plea (People v. Moon, 257 App. Div. 1019); a new trial for newly discovered evidence (People v. Beckwith, 42 Hun 366; but cf. People ex rel. Jerome v. Court of General Sessions, 185 N. Y. 504).
And even where legislation had been enacted, but was not yet effective, which permitted the People to appeal from an order suppressing a confession (§ 518, subd. 6), no appeal was available. (People v. Jeffrey, 23 A D 2d 846, affd. 17 N Y 2d 515.)
Conversely, the defendant is similarly limited and his right to appeal from an intermediate order is even more restricted. (Code Crim. Pro., § 517; see Papernó and Goldstein, Criminal Procedure in New York [1960], § 408.)
Thus, the Fourth Department, citing Zerillo (supra) and Gersewitz (supra), ruled that an application for resentence is not appealable (People v. Sidoti, 1 A D 2d 232); see, also, People v. Brown (20 A D 2d 756, 26 A D 2d 614); and the *878 First Department held that the omission to provide for an appeal is conclusive and bars appeal from the denial of a certificate of reasonable doubt (People ex rel. Epton v. Nenna, 25 A D 2d 518, mot. for lv. to app. withdrawn 17 N Y 2d 422).
For the same reason the Court of Appeals declared that although it could review the denial of a motion to dismiss an indictment on the basis of insufficiency of evidence before the Grand Jury, it was powerless to review a denial of a motion to inspect the minutes of the Grand Jury. (People v. Howell, 3 N Y 2d 672, mot. for rearg. den. 13 N Y 2d 1185, mot. to amend remittitur den. 13 N Y 2d 1186.)
In a later case (Siegel v. People, 16 N Y 2d 330, cert. den. 384 U. S. 970) the Court of Appeals denied leave to appeal from the order of the Appellate Division denying a motion brought under CPLR 5704 (subd. [a]) to vacate an eavesdropping order which had been granted ex parte. Although the denial was by no means unanimous and the majority appear to differ evenly as to the reasons therefor, the lead opinion of Judges Burke and Scileppi is pertinent to this discussion. ‘ ‘ An ex parte application for an order for eavesdropping is criminal in nature (Code Crim. Pro., § 813-a). It always has been the rule that unless there is a provision in the Code of Criminal Procedure permitting an application in connection with, or an appeal from, an order of a criminal nature, no review may be had. There is, of course, no provision in the Code of Criminal Procedure which allows an application to be made to the Appellate Division in connection with any such orders. Therefore, the Appellate Division had no jurisdiction to entertain in the first instance the application addressed to the orders for eavesdropping under CPLR 5704 (subd. [a]). As this is a criminal matter, under our Constitution and statutes relief cannot be authorized by that section. The Appellate Division should have dismissed the proceeding rather than have denied relief.” (p. 332).
Although the case sub judice appears to be one of first impression as to the People’s right to appeal from an order of contravention, the rule appears to be well established that a defendant has no such right.
As early as 1937, long before the enactment of section 813-c and subdivision 6 of section 518, the Fourth Department held that an order denying a defendant’s motion to vacate a search warrant and to release gambling apparatus seized thereunder is not appealable (People v. Ruth, 250 App. Div. 819). This *879 was followed by the Second Department in Matter of Police Benevolent Assn. v. Gagliardi (9 A D 2d 929, affd. 9 N Y 2d 803, cert. den. 368 U. S. 929) and People v. Skipwith (20 A D 2d 662, 22 A D 2d 960), denying appeals from similar orders.
In Matter of Police Benevolent Assn. v. Gagliardi (supra), the Appellate Division, in affirming the trial court’s order denying a motion to vacate a search warrant, stated: “ We do not find in the Code of Criminal Procedure any provision for a proceeding to vacate a search warrant or for an appeal in such a proceeding from an order denying the application to vacate.”
In affirming, the Court of Appeals did not refer to the Second Department’s interpretation of the code as not containing a provision to vacate a search warrant, but simply held that no appeal lay from an order denying an application to vacate a search warrant and to return seized property, 1 ‘ as this is an order in criminal cause, an appeal from which is not provided for under the Code of Criminal Procedure ” (p. 804).
The People have not raised the possibility of a right to appeal by virtue of subdivision 5 of section 518, “In all eases where an appeal may be taken by the defendant, except where a verdict or judgment of not guilty has been rendered.”
Nevertheless, as the above cases clearly demonstrate, the defendant would have no such right at this stage of the proceeding ante final judgment of conviction. (See People v. Reed, 276 N. Y. 5, 13-14; cf. People v. Evans, 18 A D 2d 1018 and People v. Garland, 20 A D 2d 822.)
The Court of Appeals has allowed the People to appeal in certain instances where such authority could be clearly inferred from the legislative purpose attributable to the relevant provisions of section 518. For example, People v. Levenstein (309 N. Y. 433 [1956]) interpreted the word “indictment” in subdivision 1 of section 518 to include an information; People v. Rossi (5 N Y 2d 396 [1959]) interpreted the phrase “ demurrer to the indictment ” in subdivision 1 of section 518 to allow the People to appeal where only one count of a multicount indictment was successfully demurred to; and People v. De Courcy (8 N Y 2d 192 [I960]), interpreted subdivision 3 of section 518 to allow an appeal where a County Court Judge had vacated a prior order of a fellow Judge permitting the filing of an information (but cf. People v. Marra, 13 N Y 2d 18 [1963], supra).
But a comparison of the legislative history in the enactment of section 809 of the Code of Criminal Procedure and sections *880 813-c, 813-d, and 813-e of the code reveals no intent on the part of the Legislature to permit the People to appeal from a motion to contravene a search warrant. Section 809 of the code was originally passed as chapter 542 of the Laws of 1962. During all of these years the only grounds upon which the People could take an appeal were found in the subdivisions of section 518 of the code and it is significant that at no time did they expressly authorize the People to appeal from the contravention of a warrant under section 809.
In 1962 the Legislature added title II-B to part 6 of the Code of Criminal Procedure, now designated section 813-c, 813-d, and 813-e, which dealt with “ motions for return of property or for the suppression of evidence alleged to have been obtained as a result of unlawful search and seizure ”. The new law was contained in chapter 954 of the Laws of 1962. This chapter also added subdivision 6 to section 518 giving the People the right to appeal ‘ ‘ From an order of a court entered prior to trial granting a motion for the return of property or suppression of evidence, made pursuant to section eight hundred thirteen-c * * * provided that the people file in the appropriate court a statement in accordance with the provisions of section five hundred eighteen-a.”
Accordingly, if the defendant is successful in suppressing evidence and the People are thereby unable to proceed they may, pursuant to subdivision 6 of section 518 of the code, take an appeal.
The same session of the Legislature which enacted section 813-c and subdivision 6 of section 518 also amended section 809 in chapter 542 of the Laws of 1962. While the amendment to section 809 was minor, at no time did the Legislature indicate in any way an intention that the People be allowed to appeal from the long-existing section 809 relief granted a defendant.
We are therefore led to an inescapable fork in the road. If the People then had a right to appeal from an order returning property seized pursuant to a search warrant, why was it necessary to enact subdivision 6 of section 518 to permit an appeal from an 813-c order requiring the return of that property? And if the People did not have this right already, then did not the Legislature, by deliberately specifying in subdivision 6 of section 518 that an appeal could be taken only where the property was ordered returned 1 ‘ pursuant to section eight hundred thirteen-c”, intend that such right be narrowly limited to a section 813-c motion?
*881 As Justice Domenick L. Gabrielli only recently pointed out in People v. Simms (36 A D 2d 23, 25): “ We are, of course, mindful of the presumption that the Legislature has investigated and found a constitutional and factual basis necessary to support the statute (Lincoln Bldg. Assoc, v. Barr, 1 N Y 2d 413, 415).”
One wonders, however, whether the Legislature did not overlook, rather than deliberately ignore, the existence of section 809. The Distribution Table of the new Criminal Procedure Law (L. 1970, ch. 996, eft. Sept. 1, 1971) indicates that it will soon be extinct. Even the Interim Report of the Temporary Commission on Revision of the Penal Law and Criminal Code (N. Y. Legis. Doc., 1962, No. 41, p. 19) demonstrates an apparent unawareness of its available procedure for the return of property. In recommending to the Legislature the enactment of a statute (present tit. II-B) to codify the rule of Mapp v. Ohio (367 U. S. 643), the commission stated that there was no pretrial machinery in existence for the return of property or for its suppression as evidence. Yet for many years section 809 had provided for at least the return of property.
Two decisions, People v. Gatti (16 N Y 2d 251) and People v. Ortiz (27 A D 2d 392) illustrate the confusion that continues to surround this area of the law.
Gatti, in 1965, held that notwithstanding pending felony charges against the defendants, a Justice of the Peace who had originally issued the warrant was authorized to vacate it. In 1967 the Second Department, following Gatti, held in Ortiz that the Supreme Court in which an indictment was pending was bound by the order of the Criminal Court, albeit a court of lesser' jurisdiction, which had vacated a search warrant, and was therefore obliged to grant the defendant’s subsequent section 813-e motion to suppress the gambling material seized pursuant to that warrant.
In urging the Legislature to create a uniform, orderly procedure, the Second Department stated (p. 395): “We, therefore, affirm the order at bar but, in so doing, we observe that this appeal illuminates a procedural problem requiring legislative consideration. In our opinion, the orderly adjudication of criminal actions would be strengthened if defendants charged with a felony were required to join motions pursuant to sections 807 to 809 with motions pursuant to section 813-c et seq., in order that the Supreme Court or the County Court may determine, in one proceeding, the issues thus raised.”
*882 Gatti and Ortiz attempted to unravel the confusion which appeared to have developed by that time. In 1963 the Second Department had already raised the question of whether a motion to vacate a search warrant could be made under section 813-c (People v. McCall, 19 A D 2d 630; see, also, Matter of Police Benevolent Assn. v. Gagliardi, supra). In 1963 the Criminal Court of the City of New York criticized the growing practice by defense counsel of bringing a separate motion to contravene, holding that “ no such proceeding is provided for in the code.” (People v. Brown, 40 Misc 2d 35, 36.)
That same year, the District Court of Nassau County, in an 813-c motion to suppress, held that it could pass upon the question of probable cause in issuing search warrants, even though doing so would involve reviewing the discretion of another court via a nonappellate proceeding. (People v. Kissinger, 40 Misc 2d 273, affd. 43 Misc 2d 820.)
Having the benefit of the later Gatti and Ortiz decisions (supra), I took the view in People v. Gray (61 Misc 2d 769, supra) that the question of probable cause should properly be examined by the court which originally issued the warrant, a view which appears to be supported by then Chief Judge Desmond’s opinion in People v. Alfinito (16 N Y 2d 181, 186), construing section 813-c to permit an inquiry “as to whether the affidavit’s statements were perjurious” [emphasis supplied]. The Court of Appeals was significantly and, I believe, deliberately silent with respect to the power to test, via section 813-c, the exercise of another Magistrate’s discretion on the issue of probable cause. (See, also, People v. Solimine, 18 N Y 2d 477, mot. for rearg. den. 21 N Y 2d 1041.)
This view appears to be fortified by the recently reiterated admonition of the Fourth Department in People v. Canna (35 A D 2d 1062, 1063) “ that one Judge of co-ordinate jurisdiction should not modify a judgment made by a colleague of equal rank in the same case. The remedy is by appropriate appellate review (cf. Matter of Haas, 33 A D 2d 1, 7-8).”
Although People v. Asaro (57 Misc 2d 373, affd. 34 A D 2d 968) seems to take the opposite view, a careful reading of Justice Fabbell’s scholarly opinion indicates that the question of collateral review was not specifically raised before him and that his decision granting an order under section 813-c to suppress and to return property seized was based upon the invalidity of the initial proceedings before the issuing Magistrate rather than upon the inadequacy of the underlying affidavits.
*883 It is now clear that' a motion to suppress, under section 813-c, may permit an examination of the factual basis for the issuance of the search warrant. (People v. Alfinito, 16 N Y 2d 181, supra; People v. Solimine, 18 N Y 2d 477, mot. for rearg. den. 21 N Y 2d 1041, supra.) And if an order of suppression is granted, even as a direct result of the search warrant’s vacatur because of the inaccuracy of the underlying affidavits, or the invalidity of the proceedings before the issuing Magistrate, an appeal will lie. (Code Crim. Pro., § 518, subd. 6.)
However anomalous the result, this would not be the case where a warrant is successfully contravened under section 809 and the seized property ordered returned, thereby achieving the same result of suppressing the evidence. The maintenance of this curious distinction does not rest in reason, but only in the Legislature’s failure to permit an appeal under one procedure as it did under the other.
Although the Legislature was invited to effect a change in 1967 by the Second Department in its decision in People v. Ortiz (27 A D 2d 392, supra), it has chosen not to do so.
Accordingly, since this court is without jurisdiction to entertain the proceeding, the People’s appeal is dismissed.
This determination being dispositive of the appeal, the other arguments raised by the defendants need not be touched upon.