In the Matter of B. T. PRODUCTIONS, INC., Doing Business as TOWN & COUNTRY DINNER THEATRE, et al., Petitioners, v CULVER K. BARR, as Judge of the Monroe County Court, et al., Respondents.

Fourth Department, November 12, 1976

*Palmiere, Passero & Crimi (Norman Palmiere* of counsel), for B. T. Productions, Inc., petitioner.

*Maxwell B. Spoont, Deputy Attorney-General (John Mansour* of counsel), for New York State Organized Crime Task Force, respondent.

*William J. Stevens, County Attorney (Michael Consedine* of counsel), for Culver K. Barr, respondent.

CARDAMONE, J. P. On August 11, 1976 approximately 20 agents of the Organized Crime Task Force (OCTF) entered the premises of Town and Country Dinner Theatre in East Rochester, New York, conducted an extensive eight-hour search, and seized the records of petitioners, B. T. Productions, Inc. which conducts its restaurant and theatre business under the name of Town and Country Dinner Theatre and Anthony Della Pietra, its president. The business records seized included canceled checks, lease agreements, unsold Town and Country Dinner Theatre admission tickets and reservation books, gift certificates, accounts receivable and payable, income tax returns, financial statements, checkbook stubs, invoices, file folders and their contents, bank deposit slips, contracts of entertainers, admission ticket receipts and cash register tapes.

The authority for this search and seizure came from a warrant applied for by the OCTF on August 10, 1976 and issued that day by respondent, Monroe County Court Judge, Culver K. Barr. The search warrant return was provided to Judge Barr on August 12, the day after the seizure, and he signed an order directing that the seized records be retained in the possession of the OCTF, subject to the further order of County Court. Petitioners' motion to obtain a copy of the search warrant application was denied by respondent Barr on August 20, 1976. Proceedings in Federal District Court were thereafter instituted.[1]

On September 2, 1976 petitioners commenced as an original action in this court an article 78 proceeding in the nature of prohibition seeking to (1) restrain the respondents OCTF and Barr from acting in excess of their lawful jurisdiction; (2) vacate the search warrant issued; (3) compel the return of the seized records. Respondents have moved to dismiss this article 78 proceeding arguing (1) that this court lacks subject matter

---

1. It appears that petitioners sought a preliminary injunction in Federal District Court to prevent what they claim was irreparable harm by the virtue of the OCTF seizure and simultaneously, in the same court, brought an action in which they assert a deprivation of Federal constitutional rights and seek money damages. The application for the preliminary injunction was denied by the District Court on August 31, 1976 and an appeal from that order has been taken by petitioners. Apparently as a result of said appeal, the District Court, on its own motion, has held in abeyance all further matters relating to petitioners' action in its court.

jurisdiction; (2) that the pending Federal action in which, respondents assert, petitioners seek the same relief acts as a bar; (3) that the petition fails to state a cause of action for prohibition because there is an insufficient showing of gravity of harm to petitioners arising from the seizure and retention of their business records; (4) that this court lacks personal jurisdiction over OCTF and its personnel.

Before dealing with the merits of the respective parties' contentions, it is necessary to decide as a threshold question whether the extraordinary remedy of prohibition is available to petitioners; if not, we need go no further. Only if such relief is available do we address the merits (*Matter of Dondi v Jones,* 40 NY2d 8; *La Rocca v Lane,* 37 NY2d 575; *Matter of State of New York v King,* 36 NY2d 59).

Originally used by the English Kings to curb the vast powers of ecclesiastical courts, the writ of prohibition has since evolved into a basic protection for the individual in his relations with the State (*Matter of Dondi v Jones, supra,* p 12; 23 Carmody-Wait 2d, NY Civ Prac, § 145:205). Its origins are firmly rooted in the common law where it first became important as a device used by the King's Bench to control inferior tribunals and bodies in 16th century Tudor England (Plucknett, a Concise History of the Common Law [2d ed.], pp 156-157). It has been for many years a statutory remedy where one of the questions that may be raised is "whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803, subd 2).

Recent decisions of the Court of Appeals erect a framework within which the issue of the availability of prohibition may be determined. It is set forth as follows: (1) this extraordinary remedy lies only where there is a clear legal right under CPLR 7803 (subd 2); (2) it is a direction to an inferior judicial tribunal or body to restrain judicial, as distinguished from legislative, executive or ministerial action; (3) it is issued not as a matter of right, but only in the sound discretion of the court. The exercise of that discretion is to be concerned with several important, but not controlling, factors among which are the gravity of the harm caused and the availability of other methods of redress. Even where more traditional remedies are technically available but would be inadequate to prevent the harm, prohibition may lie where it furnishes more complete relief; (4) it is never available, however, to prevent errors at trial, no matter how grievous, since an orderly

administration of justice requires that litigation errors be left to review by appeal and not attacked in a collateral proceeding *(Matter of Dondi v Jones, supra,; La Rocca v Lane, supra; Matter of State of New York v King, supra)*. We conclude that within the framework of these guidelines petitioners have established that respondents OCTF and Barr acted without or in excess of jurisdiction and there is, therefore, a "clear legal right" to the remedy.

We next consider whether in the exercise of sound judicial discretion the writ should be issued. The gravity of harm to the petitioners from the conduct of respondents is not diminished by the fact that the OCTF has offered petitioners access to their own business records on three different occasions. Access gratuitously offered is not a substitute for the right of petitioners to maintain possession of their corporate books and records. The gravity of harm in being subjected to a search and seizure executed under an allegedly void search warrant, the disruption of internal business operations, and the public stigma attached to being targets of an OCTF investigation cannot be considered insubstantial. Another factor to be considered is whether the excess of power can be adequately corrected on appeal or by other traditional remedies at law or equity. Respondents claim that petitioners failed to avail themselves of a method of seeking review in this case by neglecting to move to vacate the search warrant and, if such motion was denied, to appeal from the order of denial—and that this failure precludes prohibition. We note, however, that the right of review by appeal in criminal matters is governed exclusively by statute and that the denial of a motion to vacate a search warrant is an intermediate order, not appealable at the pretrial stage *(People v Ruth,* 250 App Div 819; *People v Gold,* 65 Misc 2d 873; *People v Gingello,* 62 Misc 2d 577; *People v Nichols,* 222 NYS2d 146). Further, there exists no provision in the Criminal Procedure Law which authorizes a motion to vacate a search warrant; nor is there any statutory provision permitting an appeal in such a proceeding from an order denying an application to vacate (see *Matter of Police Benevolent Assn. of New York State Police v Gagliardi,* 9 AD2d 929, affd 9 NY2d 803, mot to amd remittitur den 10 NY2d 749, cert den 368 US 929), nor may petitioners be relegated to a motion to suppress the evidence seized since such motion can only be made "after the commencement of the criminal action in which such evidence is allegedly about

to be offered" (CPL 710.40, subd 1). In the instant case no criminal action is pending, nor have any indictments been returned. Thus, it is plain that petitioners have no remedy by way of appeal. In addition, we believe that prohibition would furnish a more complete remedy.

Finally, in exercising our discretion we are mindful of the ancient roots of this writ and that it should not lightly be issued to correct a court acting in error regarding substantive or procedural law. Prohibition should only issue where a court commits acts in excess of its jurisdiction so serious as to constitute a gross abuse of power and which require summary correction *(La Rocca v Lane,* 37 NY2d 575, 580-581, *supra).* OCTF's questionable authority to apply for a search warrant, absent the required approvals, and the issuance of the same, approach that type of abuse or arrogation of power which squarely places this case within the ambit of the writ *(Matter of Lee v County Court of Erie County,* 27 NY2d 432, 437-438, cert den 404 US 823).

We turn now to the issue of OCTF's jurisdiction to apply for a search warrant in County Court under the Executive Law and consider initially whether such activity falls within the purview of subdivision 7 of section 70-a. Traditionally, search warrants cannot be issued for any purpose except as stated in the applicable criminal statutes. "A search warrant under the Revised Statutes and under the Code [Code of Criminal Procedure], like the search warrant under the old practice, is in the nature of a criminal process and we repeat that its purpose is to aid in the detection and punishment of crime. It has no relation whatever to civil process or civil trials" *(People ex rel. Simpson Co. v Kempner,* 208 NY 16, 22-23). The application for a search warrant is also criminal, rather than civil, in nature and its purpose, too, is to aid in the detection and punishment of crime.

The actual presentation of the application to the court for the issuance of a search warrant must be considered a criminal proceeding. "Criminal proceeding" is defined in CPL 1.20 (subd 18) as follows: " 'Criminal proceeding' means any proceeding which * * * (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action * * * or involves a criminal investigation". The OCTF application to County Court clearly involved a criminal investigation. The application denominates no less than four different suspected crimes in support of the request for the warrant.

Where an order is granted in the course of a criminal investigation the proceeding in which the order was issued has been held to be a criminal proceeding *(Matter of Alphonso C.,* 38 NY2d 923, 924-925). Thus, the search warrant issued by respondent Barr was the product of a criminal proceeding. Since respondent OCTF appeared before the County Court for the purpose of managing and conducting a criminal proceeding, the OCTF's conduct is governed by section 70-a of the Executive Law and it must demonstrate compliance with the conditions set forth in subdivision 7 of that section in order to justify its appearance.

The three conditions prescribe that the Governor must approve such action, the local district attorney must request or approve the activity and the criminal proceeding must be concerned with multi-county or interstate activity (see *People v Rallo,* 39 NY2d 217). The record contains no proof that OCTF requested or received the approval of either the Governor or the local district attorney prior to submitting its application. Indeed, the foundation upon which respondents' argument rests is that no approval is required for the activity in which it engaged because, it claims, its personnel had power to request the warrant as a "district attorney" pursuant to CPL 690.05 (subd 1). However, the definition of district attorney contained in CPL 1.20 (subd 32) includes deputy attorney-generals only "where appropriate". Where an OCTF attorney applies for a search warrant in County Court without the requisite approval of the Governor and local district attorney, it is inappropriate to recognize that attorney as a "district attorney" for the purpose of CPL 690.05 (subd 1). Similarly, a deputy attorney-general cannot be considered a public servant acting within the course of his official duties (CPL 690.05, subd 1) where he fails to meet the statutory criteria upon which his authorization to appear is contingent.

Respondent OCTF further contends that Judge Barr granted the search warrant as a County Judge acting as a local criminal court (CPL 10.10, subd 3, par [g]), and not as a term of county court as required in subdivision 7 of section 70-a. OCTF concludes that since it did not attend a term of the County Court, the subdivision 7 approval is unnecessary. Such construction of the phrase "term of the County Court" strains the language of the statute and we do not adopt it. Whether approval is required under subdivision 7 depends on the existence of a criminal action or proceeding being managed or

conducted by OCTF in one of the courts specified in the statute. We conclude that the approval requirement of subdivision 7 must be met in this case because the conduct and activities of OCTF are under direct and specific judicial supervision. Since OCTF failed to satisfy the prerequisites for its application for a search warrant, County Court was foreclosed from granting it.

Respondent OCTF urges that as a result of petitioners' failure to commence this proceeding in State Supreme Court, this court lacks personal jurisdiction over it and its personnel. We reject that contention as untenable. "A public prosecutor is a quasi-judicial officer, who performs important duties within our judicial system, and is subject to prohibition under proper circumstances" restraining him from proceeding in a matter over which he has no jurisdiction (*Matter of Dondi v Jones,* 40 NY2d 8, 13, *supra*). Although respondent OCTF's personnel are deputy attorneys-general, not local district attorneys, their conduct in applying for the search warrant so parallels that of the local district attorney that the general rule regarding public prosecutors should apply.

The fact that petitioners did not commence their proceeding in State Supreme Court is not determinative. By virtue of the original application, the matter is now before this court; the parties have submitted it to us upon the merits and the court, accordingly, has personal jurisdiction.

Finally, we turn to respondent's claim that this court lacks subject matter jurisdiction of this proceeding. Concededly the procedure followed by petitioners has no explicit sanction in the CPLR but such fact does not deprive this court of jurisdiction (*Matter of Snee v County Court of County of Cayuga,* 31 AD2d 303). Since petitioners seek prohibition against a County Court Judge as well as a public prosecutor, the proceeding must be commenced in the appropriate Appellate Division (CPLR 506, subd [b], par 1; *Matter of Nolan v Court of General Sessions,* 15 AD2d 78, affd 11 NY2d 114).

A writ of prohibition should issue restraining respondents OCTF and Barr from acting in excess of their lawful jurisdiction; vacating the search warrant issued; and compelling the return forthwith of the books and records seized from petitioners.

MAHONEY, DILLON, GOLDMAN and WITMER, JJ., concur.

Motion to dismiss petition denied and writ of prohibition

unanimously granted, without costs in accordance with opinion by CARDAMONE, J. P.