OPINION OF THE COURT
David O. Boehm, J.
In this CPLR article 78 proceeding the petitioner, District Attorney of Monroe County, seeks a judgment vacating, annulling and setting aside the adjournments in contemplation of dismissal (hereinafter ACDs) granted to respondents, Nicholas and Joseph Miaño, by respondent, Honorable Reuben K. Davis, Judge of the City Court of Rochester, and further seeks reinstatement of the criminal trespass informations filed against the Míanos. By cross motion, Judge Davis seeks an order of prohibition restraining the District Attorney of Monroe County from requiring waivers of civil remedies before consenting to ACDs. An application by the Monroe County Public Defender to intervene pursuant to CPLR 7802 (subd [d]) was granted, and the Criminal Justice Section of the Monroe County Bar Association has filed a brief amicus curiae.
On December 27, 1979, respondents Nicholas and Joseph Miaño were arrested and charged with criminal trespass in the third degree, in violation of section 140.10 of the Penal Law, based upon their unauthorized presence inside a City of Rochester ice rink when it was closed. On December 28, 1979, the Míanos were arraigned before Judge Davis and entered not guilty pleas. A trial date of February 19, 1980 was set after several adjournments.
On February 9, 1980, the Míanos appeared before Judge Davis and their counsel moved for dismissal of the informations in the interest of justice upon the ground that although defendants and the court were willing to accept and grant ACDs, and the People had conceded that defendants were qualified for ACDs, the People nevertheless would not consent to the granting of the ACDs in the absence of the defendants’ execution of a form entitled "acd application form” which bore the legend "to be completed in court, on the record, before granting of acd”. The form provides, inter alla, that the defendant agrees "that the _Police Department had reasonable grounds to arrest [the defendant] for the charge(s) of _ and that the above arrest was not improper or illegal.” Defendants refused to execute the forms and the District Attorney refused to consent to the ACDs.
*921 Judge Davis and the prosecutor then engaged in the following colloquy:
"the court: As I understand the position of the People, Mr. Collins, the People are insisting that this document [to] which you have made reference, be signed as a condition precedent to the granting of the adjournment in contemplation of dismissal—
"mr. collins: That would be true.
"the court: — and except for the enactment of the extraction of this condition, the People would be otherwise disposed to consent to the application of the Defense?
"mr. collins: Yes, sir.”
Judge Davis, relying on People v Siragusa (81 Misc 2d 368), granted ACDs to both defendants over the prosecutor’s objection, without requiring prior execution of the waiver. The District Attorney now argues that Judge Davis was without power to do this because CPL 170.55 requires consent of the prosecutor as a condition precedent to the granting of an ACD.
This form is the focus of the present controversy. At oral argument, defense counsel and the Public Defender stated that execution of the form was required by the District Attorney as a precondition in every case in which an ACD was requested. The District Attorney denied this at oral argument and by affidavit responded that this was not a uniform requirement, citing one case in which, after investigating the allegations made by the defendant against the police, their office did not require execution of the form. However, the affidavits of four City Court Judges and several Assistant Public Defenders reinforce the fact that execution of this form is required and establish that, in spite of the occasional exception, execution of this form is required as a matter of policy.
The initial question presented is whether the District Attorney’s application is properly before this court at this time. By virtue of CPL 170.55, the prosecution has the unfettered option to restore the cases to the calendar within six months of the granting of the ACD. Accordingly, the Attorney-General argues that the action sought to be reviewed is a nonfinal order and that, therefore, this article 78 proceeding is premature (CPLR 7801).
Notwithstanding the apparent bar of CPLR 7801, the Court *922 of Appeals has found that orders such as the one at issue here are reviewable under CPLR 7803 (subd 2), which codifies the ancient writ of prohibition. In La Rocca v Lane (37 NY2d 575, 580), the court, in discussing the guidelines to be used in determining the propriety of entertaining such proceedings in pending criminal cases, stated: "[I]t is crucial to distinguish between an error in procedure or substantive law during a litigation and the arrogation of power which is subject to correction by prohibition. Thus, even constitutional issues involving errors of substantive or procedural law are not cognizable by way of prohibition [citations omitted]. If, however, a court acts without jurisdiction, or acts or threatens to act in excess of its powers, and it affirmatively appears that this will be done in violation of a person’s, even a party’s, rights, but especially constitutional rights, prohibition will lie to restrain the excess of power”.
When measured against this test, it is clear that the District Attorney’s application is proper. If, as the District Attorney contends, the Criminal Procedure Law does not allow the Trial Judge to grant ACDs in the absence of the prosecutor’s consent, then the court, in so doing, plainly acted in excess of its powers. Moreover, because of the peculiar procedural status of the case, no appeal is available. Accordingly, prohibition properly lies in this instance (see, e.g., Matter of B. T. Prods, v Barr, 54 AD2d 315, 317-318).
Turning now to the substantive questions, the problems involved in these proceedings strike at the heart of the plea bargaining process as well as the extent of the prosecutor’s discretion and control over the administration of that process. The specific statute under which ACDs are granted (CPL 170.55) provides for consent of both the prosecution and the defense as a prerequisite, and the District Attorney here takes the position that the discretion to withhold his consent is absolute. In support, the District Attorney refers to a similar situation in which, when consent to an ACD was withheld by the prosecution, one court held that it was powerless to compel its exercise (People v Stern, 83 Misc 2d 935). In another case, where the People requested an ACD, it was held that the court lacked the authority to deny the request (People v Ruggieri, 100 Misc 2d 585).
The District Attorney also suggests that the general right of the District Attorney to control the course of prosecutions (see, e.g., Matter of Cosgrove v Kubiniec, 56 AD2d 709, 710) *923 serves to bar any limitations on prosecutorial control over the plea bargaining process. Lastly, the District Attorney points out that the United States Supreme Court, in recognizing that the offer of a more favorable disposition in return for the surrender of certain rights is " 'an inevitable’ — and permissible — 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas’ ” (Bordenkircher v Hayes, 434 US 357, 364), has thereby condoned the practice at issue here.
Notwithstanding the assertions of the District Attorney, prosecutorial discretion in the plea negotiation process is far from absolute. Presumably, courts would be particularly sensitive to any charge that the prosecutor refused to bargain for racial, sexual, or religious reasons, for refusal by the defendant to offer a bribe, or on the basis of any other impermissible classification (see, e.g., Oyler v Boles, 368 US 448, 456). The fact is that courts have placed limitations upon the so-called unfettered discretion of the prosecutor. Thus, in People v White (32 NY2d 393) and People v Blakley (34 NY2d 311), it was held that defendants may not be compelled to waive their rights to a speedy trial in return for a favorable plea. And in selecting targets for prosecution, the United States Supreme Court, in Yick Wo v Hopkins (118 US 356) made race an impermissible factor (see, also, People v Walker, 14 NY2d 901).
The guiding principles to be followed by the prosecution in both the case selection and negotiation processes are best summed up in People v Byrd (12 Mich App 186,198 [Levin, J., concurring]), a case in which a defendant challenged the validity of his plea of guilty on the ground that it was, though bargained for, involuntary: "As long as the prosecutor sticks to the merits, the facts preceding and surrounding the commission of the crime, the history of the offender and the public interest in bringing the offender to justice, he operates within the range of discretion allowed him.”
With specific reference to the extraction of a waiver of civil remedies against the arresting officers as a condition of dismissal or criminal charges, many State and Federal courts have condemned this practice on a number of grounds. For example, in MacDonald v Musick (425 F2d 373), the Ninth Circuit Court of Appeals held that conditioning the voluntary dismissal of a criminal charge on a stipulation by the defendant that the police officers had probable cause to arrest was violative of Disciplinary Rule 7-105 of the American Bar *924 Association Code of Professional Responsibility, which prohibits attorneys from threatening to present criminal charges to obtain an advantage in a civil matter. The court further pointed out that such a requirement deprived the defendant of his rights under the Civil Rights Act (US Code, tit 42, § 1983).
In Gray v City of Galesburg (71 Mich App 161, 166-167), the Michigan Court of Appeals, reasoning that "contracts of such a nature may tend to deprive the public of their right to vigorous enforcement of penal statutes and ordinances for the predominant purpose of benefiting individual persons, and * * * are inherently coercive”, held that such waivers are invalid as being against public policy. A similar approach was taken by the Seventh Circuit Court of Appeals in Boyd v Adams (513 F2d 83) wherein a release of civil claims against police officers was held invalid as against public policy in a subsequent civil rights action against the arresting officer.
In Dixon v District of Columbia (394 F2d 966), the District of Columbia Circuit dismissed traffic informations filed against a defendant after he had filed a complaint against the officers who had stopped him. The prosecution and the defendant had previously agreed to an arrangement whereby the government would not prosecute the defendant if the defendant would not pursue his complaint. In its holding, the court stated (p 968): "If * * * the Government had legitimately determined not to prosecute appellant and had then reversed its position solely because he filed a complaint, this would clearly violate the first amendment. The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances. Moreover, a prosecution under such circumstances would be barred by the equal protection clause, since the Government employs an impermissible classification when it punishes those who complain against police misconduct and excuses those who do not.”
The only cases in New York which treat this question at any length are People v Siragusa (81 Misc 2d 368, supra), which was relied upon by the court below, and Dziuma v Korvettes (61 AD2d 677). In Siragusa, the court was confronted with a situation factually distinguishable from this, in that the prosecutor agreed to an ACD prior to requiring a waiver of the defendant’s right to bring a claim against the county. The court held that a prosecutor, having found a defendant otherwise qualified for an ACD, could not condition *925 consent on the defendant’s release of his civil claims. In so doing, the court adopted the constitutional approach articulated in Dixon, stating:
"The condition set forth by the prosecutor seeks to have the defendant relinquish his constitutional right to petition the government for a redress of grievances * * * Contrary to the prosecutor’s contention that he has a duty to protect the county and the police against unjust claims, it is the finding of this court that he may not prosecute for the purpose of deterring citizens from exercising their right to protest official misconduct and petition for redress of grievances.
"Having determined that the defendant is worthy of an A.C.O.D., the prosecutor may not condition his consent upon defendant’s release of his constitutional rights. The court finds this to be an unreasonable condition amounting to undue pressure and an act of coercion and duress” (81 Misc 2d, at p 372).
Dziunaa v Korvettes (61 AD2d 677, supra) discussed the question in connection with the validity of a waiver extracted in a criminal proceeding as a defense to liability in a subsequent civil action. The plaintiff had been arrested for shoplifting. Upon the People’s consent to dismissal of the charge, the court, sua sponte, conditioned dismissal upon release by the defendant of his claim against the store. The First Department held (pp 679-680) the waiver invalid as a defense because the circumstances under which it had been obtained amounted to coercion and duress.
Notwithstanding the prosecutor’s argument to the effect that the extraction of this waiver is a valid part of the bargaining process, the practical consequences of the waiver, if effective, fall outside the ambit of the prosecutor’s responsibility in the criminal justice process. As pointedly observed by the Ninth Circuit: "It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge” (MacDonald v Musick, 425 F2d 373, 375, supra).
As the Public Defender pointed out in his brief the District Attorney is a quasi-judicial officer (see, e.g., People v Kyser, 52 AD2d 1072) whose chief function it is to see that the laws of the State are faithfully executed and enforced. Representation of the civil interests of the police plays no part in the perfor *926 manee of these duties. There is already adequate representation provided by the Corporation Counsel and it is no part of the District Attorney’s duties to assume this obligation in addition to those he is legally required to perform.
Moreover, as recognized by those courts which have considered the question in a constitutional context, extraction of this waiver is replete with infirmities. By penalizing in this way those who seek to assert or protect their right to redress, the District Attorney’s policy, no matter how well intended, clearly violates the protections guaranteed by the Bill of Rights, including the equal protection clause’s guarantee against impermissible classification. While never specifically recognized as such, the right to petition for redress is the same kind of fundamental societal interest which was recognized in People v Blakley (34 NY2d 311, 313, supra). This is dramatically illustrated by the fact that, for the purposes of the Civil Rights Act (US Code, tit 42, § 1983), the guilt or innocence of the injured party has no effect on the inquiry into official misconduct (United States v McLeod, 385 F2d 734, 744).
The equal protection clause of the Fourteenth Amendment "must mean that no agency of the State, or of the officers or agents by who its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws.” (Ex parte Virginia, 100 US 339, 347), and equal protection is clearly denied when the law is applied with "an evil eye and an unequal hand” (Yick Wo v Hopkins, 118 US 356, 373-374, supra). To permit the prosecutor, an agent of the State, to confer a benefit on those who surrender their right to pursue the police for wrongs committed in the course of their official duties is to sanction a procedure which creates an imbalance in a system established to insure equal justice. As the court said in Dixon v District of Columbia (394 F2d 966, 969, supra):
"The major evil of these agreements [demanding releases as a condition for dropping charges] is not that charges are sometimes dropped against people who probably should be prosecuted. Much more important, these agreements suppress complaints against police misconduct which should be thoroughly aired in a free society * * *
"Courts may not become the 'enforcers’ of these odious agreements. We must therefore bar prosecutions which are brought because the defendant refused to promise or reneged on a promise not to file a complaint against the police. *927 Prosecutors will then have no incentive to offer or make such agreements.”
In view of the foregoing, it is apparent that the learned City Court Judge acted well within his power in granting the ACDs, notwithstanding the refusal of the District Attorney to consent. The District Attorney’s application is accordingly denied.
In light of this disposition, there is no compelling necessity to grant the cross application for a writ prohibiting the District Attorney from continuing to require the waiver (Matter of State of New York v King, 36 NY2d 59, 62).