■ ANTHONY DELLA PIETRA et al., Respondents-Appellants, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 62334.)—Judgment modified, on the law, and, as modified, affirmed, without costs, and matter remitted to Court of Claims for further proceedings, in accordance with the follow-

ing memorandum: Claimant B-T Productions, Inc. operated a dinner theater in East Rochester, New York, which opened in December 1974 and showed a profit of $30,000 the first year. The business was highly successful, necessitating an addition in 1975 to permit seating of an additional 200 people. Thereafter, claimant Anthony Della Pietra and his business partner, Barry Tuttle, each of whom owned half the business, had a falling out and Della Pietra sought to buy out Tuttle, who went to the New York State Organized Crime Task Force, asserting that the business was engaged in organized crime. The Task Force obtained a search warrant and seized a large number of documents, including many involving the day-to-day running of the business. The search warrant was later held invalid because the Task Force had failed to obtain the Governor's approval as required by statute, and we granted the extraordinary remedy of prohibition *(Matter of B.T. Prods. v Barr,* 54 AD2d 315), and the Court of Appeals affirmed, holding that Task Force officers exceeded their jurisdiction (44 NY2d 226). No further criminal prosecution ever took place beyond the seizure of the records. In the interim, however, publicity resulting from the illegal search and seizure caused business to plummet. Political functions were canceled; advance sales dropped off; and it became difficult to schedule performers. Ultimately, the business went bankrupt. Claimants commenced this lawsuit and the Court of Claims awarded $777,000.

On appeal, the State argues, *inter alia,* that reversal is mandated because: there is no theory of liability to support recovery; the State is immune from suit; and damages are speculative as a matter of law. Claimants cross-appealed, seeking to increase damages and obtain prejudgment interest. We affirm in all respects except to remit for the fixing of prejudgment interest.

Although the claim does not refer to a specific tort theory, this is no bar to recovery under modern rules of pleading *(Diemer v Diemer,* 8 NY2d 206, 212; *see also, Underpinning & Found. Constructors v Chase Manhattan Bank,* 46 NY2d 459, 464, n 1). At the commencement of the trial, claimants' attorney stated that he intended to establish liability under several theories. Without addressing them all, we agree that claimants have spelled out liability under theories of conversion and tortious interference with business.

"Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property, which interferes with and is in defiance of a superior

possessory right of another in the property" *(Meese v Miller,* 79 AD2d 237; *see also, Sporn v MCA Records,* 58 NY2d 482; *Kahn v Crames,* 92 AD2d 634, 635; *General Elec. Co. v American Export Isbrandtsen Lines,* 37 AD2d 959). In this case, the Task Force search and seizure were unlawful not merely because of lack of probable cause, but because Task Force officials exceeded their jurisdiction in applying for the warrant *(Matter of B.T. Prods. v Barr, supra,* pp 232, 236). Under these circumstances, the wrongful withholding of claimants' property for over two years amounted to conversion. Tortious interference with business relations occurs when defendant uses unlawful means to disrupt plaintiff's business, resulting in injury *(Sommer v Kaufman,* 59 AD2d 843; *Rosenberg v Del-Mar Div.,* 56 AD2d 576, 577; *see also, NRT Metals v Laribee Wire,* 102 AD2d 705, *appeal dismissed* 63 NY2d 770; *Harden, S.P.A. v Commodore Elecs.,* 90 AD2d 733; *see,* Dunn, Recovery of Damages for Lost Profits, at 145-148 [2d ed]). The disruption of claimants' business resulting from the unlawful seizure and the resulting notoriety of being associated with organized crime resulted in the bankruptcy of claimants' business, and renders the State liable for its conduct.

We also reject the State's claim of immunity. *Tango v Tulevech* (61 NY2d 34) does not apply to the facts of this case, since Task Force officials were not exercising their discretion in conducting an unlawful search. Nor does the qualified immunity applicable to the prosecutorial function apply where officials act in an investigatory manner and in doing so step outside the scope of their authority *(Teddy's Drive In v Cohen,* 47 NY2d 79, 82).

Finally, we find the damages supported by the record. The court was free to reject the statistical projections of increased future profit suggested by the expert *(Lloyd v Town of Wheatfield,* 67 NY2d 809; *Kenford Co. v County of Erie,* 67 NY2d 257), and to disregard the half million dollars in loans to claimants which were discharged in bankruptcy. Claimants' creditors, not claimants, suffered those losses. We agree that claimants are entitled to prejudgment interest. Where the precise date from which to fix interest is ambiguous, "the date of commencement of the damage action" is an appropriate date to choose *(Delulio v 320-57 Corp.,* 99 AD2d 253, 255; *De Long Corp. v Morrison-Knudsen Co.,* 20 AD2d 104, *affd* 14 NY2d 346). The matter is remitted to the Court of Claims and the clerk is directed to calculate interest on the recovery from August 11, 1978, the date the claim was filed, to December 2, 1985, the date of the judgment.

All concur, except Lawton, J., who dissents and votes to reverse and dismiss the claim, in the following memorandum.

Lawton, J. (dissenting). The claimants, by a joint notice of claim filed on August 11, 1978, seek to recover damages against the State flowing from the New York State Organized Crime Task Force's obtaining and executing a search warrant against the claimants' properties on or about August 11, 1976. Claimants allege that the material seized was retained by the Task Force until April 10, 1978. Claimants allege further that by reason of this seizure and retention, claimant B-T Productions, Inc.'s dinner theater suffered loss of business, forcing the claimants into bankruptcy. No specific theory of liability is set forth in the notice of claim. The Court of Claims, in finding liability, did not identify the nature of the action, choosing instead to rely upon language of the Court of Appeals and of this court in opinions in a previous cause of action brought by the claimant, B-T Productions, Inc., against Judge Barr for a writ of prohibition *(see, Matter of B.T. Prods. v Barr,* 54 AD2d 315, *affd* 44 NY2d 226). The majority now affirms giving the claim the identity of the torts of conversion and tortious interference with claimants' business.

There has been no finding that the search warrant which is the subject of this action was issued based upon insufficient affidavits or that it was issued by a court lacking jurisdiction. Trial Term and the majority herein base defendant's liability solely on its failure to obtain prior approval from the Governor and the appropriate District Attorney before obtaining the search warrant for claimants' premises. In *Matter of B.T. Prods. v Barr (supra),* the Court of Appeals voided this search warrant, finding such preapproval a jurisdictional prerequisite pursuant to Executive Law § 70-a (7). The majority views that the respondent's failure to comply with Executive Law § 70-a (7) creates liability per se. I disagree. In doing so I believe that the majority is creating a new cause of action not previously recognized at law *(see,* Restatement [Second] of Torts § 266). Claimants' proper cause of action was pursuant to 42 USC § 1983, which they duly brought, tried and lost in Federal court.

This holding further violates both the absolute and qualified immunities afforded to prosecutors in the performance of their duties. Absolute immunity is accorded to prosecutors in the performance of their functions as an advocate in the criminal process *(Imbler v Pachtman,* 424 US 409). Pursuant to Executive Law § 70-a, the Task Force was seen by the Court of Appeals in *Matter of B.T. Prods. v Barr (supra)* to possess the

prosecutorial power to obtain a search warrant. However, the exercise of this power was determined by the court to require the preapproval of the Governor and appropriate District Attorney. The obtaining of this search warrant, albeit improperly as without the Governor's approval, was nevertheless within traditional prosecutorial functions which are entitled to absolute immunity *(see, e.g., Imbler v Pachtman, supra; Betts v Richard,* 726 F2d 79, 81; *Ybarra v Reno Thunderbird Mobile Home Vil.,* 723 F2d 675, 678). Absolute immunity is further conferred despite the search warrant being wrongfully obtained by the discretionary and quasi-judicial nature of the Task Force's exercising its reasoned judgment to investigate claimants' alleged links with organized crime *(Tango v Tulevech,* 61 NY2d 34; *Van Buskirk v Bleiler,* 46 AD2d 707).

Even assuming the Task Force's action is not entitled to absolute immunity, nevertheless, the claim must be dismissed because of their good-faith qualified immunity. The Task Force members, when acting in good faith, are entitled to dismissal of claims arising from their conduct unless their actions violate "clearly established law" *(Mitchell v Forsyth,* 472 US 511, 530). Herein, the Task Force officials believed that, based upon their investigative powers, in accordance with their prior practice, and with the cooperation of the State Police, they could obtain this search warrant. The Court of Appeals in *Matter of B.T. Prods. v Barr (supra,* pp 233-234) held that despite the State trooper's authority to seek a warrant without prior approval, he could not do so when acting solely as an agent of the Task Force. In hindsight, the Task Force erred in its interpretation of the Executive Law. This, though, does not result in civil liability as a matter of law. The members of the Task Force in obtaining the search warrant were performing their basic discretionary function of "commencing and maintaining a concerted and concentrated investigative and prosecutive effort to break the structure and power of organized crime" (L 1970, ch 1003, § 1 [4]). Being discretionary acts they were not subject to suit if their actions were only later held to be improper *(see, Harlow v Fitzgerald,* 457 US 800). Herein, the Task Force's authority to obtain this warrant was an open question at the time of application and the court's subsequent determination does not alter this fact. I find this case indistinguishable from *Mitchell v Forsyth* (472 US, at 535, *supra),* wherein the court denied liability based on qualified immunity despite a domestic security wiretap having been determined subsequent to placement to be statutorily unauthorized and constitutionally impermissible, stating: "The le-

gality of the warrantless domestic security wiretap Mitchell authorized in November 1970, was, at that time, an open question, and *Harlow* teaches that officials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted. The District Court's conclusion that Mitchell is not immune because he gambled and lost on the resolution of this open question departs from the principles of *Harlow*. Such hindsight-based reasoning on immunity issues is precisely what *Harlow* rejected. The decisive fact is not that Mitchell's position turned out to be incorrect, but that the question was open at the time he acted."

No clearly established law existing, the Task Force's action in obtaining in good faith this search warrant is cloaked with a qualified immunity requiring dismissal of this claim *(see, Mitchell v Forsyth, supra; Harlow v Fitzgerald, supra; Wood v Strickland,* 420 US 308, *reh denied* 421 US 921).

Finally, the Court of Claims made an award of damages of $777,000 without any breakdown or rationale as to how this amount was arrived at as required by CPLR 4213 (b) *(see, Treadway Inns Corp. v Robe of New Hartford,* 91 AD2d 828). Further, the trial court did not attempt to break down its award as between the three claimants. What share of the award is each individual claimant entitled to recover and how much is to go to the bankrupt corporation? These failures render appellate review nearly impossible and require remittal for additional findings of fact *(Treadway Inns Corp. v Robe of New Hartford, supra; Ramirez v Goldberg,* 77 AD2d 589). (Appeals from judgment of Court of Claims, Quigley, J.—negligence.) Present—Callahan, J. P., Doerr, Green, Lawton and Schnepp, JJ.