OPINION OF THE COURT
Hancock, Jr., J.
 Claimants have recovered a judgment against the State for damages to their business resulting from actions of the New York State Organized Crime Task Force in illegally entering and searching their premises; seizing books, records and other property; and retaining them for a prolonged period of time. The conduct of the State agents in invading these *795 claimants’ rights, we have previously held, was without any statutory or other authority (see, Matter of B. T. Prods. v Barr, 44 NY2d 226, 236). The principal issue presented by the State in its appeal is whether, notwithstanding this lack of authority, it may assert absolute prosecutorial or quasi-judicial immunity for the acts of its agents. For the reasons which follow, we hold that it may not. Moreover, in view of the undisturbed findings of bad faith, we also conclude that the State’s assertion of qualified immunity here is unavailing.
I
Barry Tuttle and claimant Anthony Della Pietra were co-owners of claimant B. T. Productions, Inc., which operated a dinner theater in East Rochester, New York. Although the business was doing well, the partners had a falling out over how it should be run. When Della Pietra took over sole operation of the business and tried to make Tuttle sell him his interest, Tuttle, apparently out of spite, went to the Task Force and reported that the business was engaged in organized crime.
Based in part on an affidavit signed by Tuttle, the Task Force obtained a search warrant and seized the bulk of the theater’s books and records. After trying repeatedly to recover them, Della Pietra and B. T. Productions commenced a CPLR article 78 proceeding seeking a writ of prohibition vacating the search warrant and compelling return of the items seized. The Appellate Division granted the petition and issued the writ (Matter of B. T. Prods. v Barr, 54 AD2d 315). We affirmed, holding that due to "the absence of any statutory authority to obtain a search warrant, it is clear that the Task Force lacked the power to make such an application, and thus the court exceeded its jurisdiction in issuing the warrant” (44 NY2d 226, 236, supra). Nearly two years after the seizure of claimants’ property, it was returned to them. They were never indicted or prosecuted. No evidence against them was ever presented to a Grand Jury or other accusatory authority.
In the Court of Claims, claimants presented proof that the illegal search and seizure and the surrounding adverse publicity caused their customers to stay away and ultimately forced B. T. Productions into bankruptcy. The court found the State responsible and assessed damages in the amount of $777,000. The Appellate Division modified, adding interest from the date the claim was filed, and otherwise affirmed. We now affirm.
*796 II
The State contends that no recovery should have been allowed because, contrary to the holdings of the lower courts, the Task Force’s conduct in obtaining and executing the search warrant was either prosecutorial or quasi-judicial in nature and, therefore, entitled to absolute immunity (see, Imbler v Pachtman, 424 US 409; Tarter v State of New York, 68 NY2d 511; Tango v Tulevech, 61 NY2d 34; Schanbarger v Kellogg, 35 AD2d 902, appeal dismissed 29 NY2d 649, cert denied 405 US 919). We disagree.
In the usual case where the government professes entitlement to absolute sovereign immunity, no question arises concerning the authority of its officials to act (see, e.g., Arteaga v State of New York, 72 NY2d 212, 218; Tango v Tulevech, supra, at 41-42). The sole question, ordinarily, is whether the official actions constitute discretionary conduct which sufficiently manifests the attributes of judicial decision-making to merit full immunity (Arteaga v State of New York, supra, at 217; Tarter v State of New York, supra, at 518-519; Santangelo v State of New York, 101 AD2d 20, 28-29). Where, however, the official "has stepped outside the scope of his authority” (Teddy’s Drive In v Cohen, 47 NY2d 79, 82) and acted in the clear absence of all jurisdiction or without a colorable claim of authority, there is plainly no entitlement to absolute immunity, even if the underlying acts are prosecutorial or quasi-judicial in nature (see, Rudow v City of New York, 822 F2d 324, 327-328 [2d Cir]; Ybarra v Reno Thunderbird Mobile Home Vil., 723 F2d 675,678 [9th Cir]; Prosser and Keeton, Torts § 132, at 1058-1059 [5th ed]). Thus, if, as claimants contend, the Task Force acted without any colorable claim of authority, the State would not be entitled to absolute immunity, even if its acts would otherwise have been considered quasi-judicial in nature and for that reason deserving of full protection.
With few exceptions, the Legislature has delegated the responsibility for prosecuting persons accused of crime solely to the District Attorney, the public officer entrusted with the general prosecutorial authority for all crimes occurring in the county where elected (see, County Law §§ 700, 927; Matter of Darvin M. v Jacobs, 69 NY2d 957, 959; see also, Matter of Turecamo Contr. Co., 260 App Div 253, 257). The Attorney-General, by contrast, is given no general prosecutorial authority and, except where specifically- permitted by statute (see, *797 e.g., General Business Law §§ 358, 692; Executive Law § 70-a), has no power to prosecute criminal actions (see, Matter of B. T. Prods. v Barr, 44 NY2d 226, 236, supra; People v Di Falco, 44 NY2d 482, 485-486; People v Rallo, 39 NY2d 217, 221-223). Similarly, the Task Force, as an arm of the Attorney-General and a creature of the State, "has no power other than that given it by the Legislature” (Matter of B. T. Prods. v Barr, supra, at 236; see, People v Di Falco, supra, at 486; Governor’s Mem in support of Executive Law § 70-a, reprinted in 1970 McKinney’s Session Laws of NY, at 3142).
The Legislature enacted Executive Law § 70-a for the specific purpose of creating an agency capable of investigating and prosecuting multicounty organized criminal activity, a duty which local prosecutors were unable to perform satisfactorily "because of their limited resources and restricted geographical jurisdiction” (see, Legislative Findings, L 1970, ch 1003, §1 [3]). This exceptional grant of prosecutorial authority to the Task Force was not self-executing and it was subject to specific limitations and conditions* (see, Executive Law § 70-a [7]; cf., Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 18 [evaluating Attorney-General’s power under similar provision in Executive Law § 63 (2)]). Thus, in Matter of B. T. Prods. v Barr (supra) we held that, without prior authorization by the Governor and approval by the local District Attorney, "it is clear that the Task Force lacked the power” to apply for and execute the search warrant here in question (Matter of B. T. Prods. v Barr, supra, at 236; see, Governor’s Mem in support of legislation, op. cit., at 3143; but see, n below).
Notwithstanding the import of our decision in Matter of B. T. Prods. v Barr (supra), the State maintains that its Task Force agents, as representatives of the Attorney-General’s office, were acting under some colorable authority in obtaining the search warrant; that they were merely operating under a mistaken assumption as to the scope of their jurisdiction. The argument, however, simply overlooks the essential point that the Attorney-General is without any prosecutorial power except when specifically authorized by statute. Here, the agents and the Attorney-General were not prosecutors acting illegally or in excess of their authority; they were not prosecutors at *798 all (cf., Rudow v City of New York, supra, at 329 [Human Rights Commission staff attorney acting without "the bureaucratic boundaries of her position” but, nevertheless, within the general jurisdiction of the agency]; Lerwill v Joslin, 712 F2d 435, 439-440 [10th Cir] [city attorney having prosecutorial authority for misdemeanors mistakenly presenting complaint involving felony charge]; see also, Barr v Abrams, 810 F2d 358, 361-362 [2d Cir]). We conclude, then, that because the Task Force agents had no colorable claim of authority, the State has no basis for asserting absolute immunity.
Ill
Defendant argues, nevertheless, that even if the actions of its Task Force agents were performed in the clear absence of jurisdiction or authority, it would be entitled to qualified immunity. On these facts, however, any claim of qualified immunity would not shield the State from liability.
Qualified immunity does not shield the State from liability where its officials acted in bad faith or without a reasonable basis (see, Arteaga v State of New York, supra, at 216; Matter of Friedman v State of New York, 67 NY2d 271, 283-285; cf., Tango v Tulevech, supra, at 42). The undisturbed findings support the Court of Claim’s conclusions that "the Task Force was careless, was grossly negligent and recklessly exercised a power over claimant which it did not rightly have”, and that its conduct in procuring and executing the search warrant "was unconscionable, to phrase it in the most charitable light” (emphasis added). These factual findings, which are fully dispositive of the legal issue concerning qualified immunity under established New York law, have support in the record and, therefore, are beyond our review.
We have considered the State’s other contentions and find them to be either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order affirmed, with costs.

 Executive Law § 70-a was amended after the execution of the warrant and our decision in Matter of B. T. Prods. v Barr (44 NY2d 226). The law as it existed at the time the action arose applies to this case.