## In re B–T PRODUCTIONS, INC., Debtor.

### Bankruptcy No. 77–1046.

United States Bankruptcy Court, W.D. New York.

Sept. 6, 1989.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This matter is before the Court on the motion of James Doyle, substituted trustee, to require an accounting of the fees claimed and taken by the law firm of Harris, Beach, Wilcox, Rubin & Levey ("Harris, Beach") as special counsel to the debtor, B–T Productions, Inc. ("B–T Productions"). The trustee disputes the amount of compensation to which Harris, Beach is entitled. An evidentiary hearing was held on June 1 and 2, 1989, after which decision was reserved pending availability of the hearing transcript and filing of additional briefs by the parties.

The claimed fees were incurred during Harris, Beach's representation of the debtor and two of the debtor's principals, Anthony and Eugene Della Pietra, in a prolonged and difficult action against New York State in the New York Court of Claims.[1] Between early 1985 and June, 1988, Harris, Beach prepared and tried the plaintiffs' tort claim against the State of New York, then pursued appeals up to the New York Court of Appeals. The plaintiffs' recovery in the Court of Claims was $770,000. As a result of the appeals, the plaintiffs were granted prejudgment interest, bringing their ultimate recovery to $1,500,061.45.

When Harris, Beach received the State's check in December, 1988, they deposited it, withdrew their claimed fee of $634,618.44 [2] plus disbursements of $6,979.08, issued a $93,320.31 check to Anthony Della Pietra to pay specified disbursements, and divided

---

1. Harris, Beach also represented these clients, among others, in a related action in federal district court against the New York State Organized Crime Task Force during the period 1979–1982 under a contingent fee agreement. That litigation was unsuccessful and no claim for fees in that action is involved in the instant dispute.

2. Harris, Beach calculated their fee as follows: $100,000, representing 33⅓% of the first $300,000 awarded; $360,018.44, representing 30% of the remainder of the award; $174,600.00 for 873 hours of appellate work from 7/24/85 through 12/15/88 at $200/hour. (Exhibit H).

the balance 60:40 between the plaintiffs Della Pietra and the plaintiff/debtor B–T Productions.[3] The debtor received $306,057.45.

The trustee argues that Harris, Beach is limited to a compensation rate of $80/hour under the terms of a 1982 bankruptcy court order approving their employment. Harris, Beach insists that it renegotiated its fee arrangement so that it was entitled to the $200/hour rate at which it calculated the fee it took for appellate work. The history of Harris, Beach's fee arrangement with the debtor and its other clients is as follows.

When related actions were commenced in district court and the Court of Claims in 1976, the plaintiffs in both actions were represented by the law firm of Weiner, Lawrence. In 1978, Weiner, Lawrence arranged for Harris, Beach to be retained to conduct the litigation. On April 26, 1977, B–T Productions had filed a petition in bankruptcy under Chapter IV of the Bankruptcy Act, 11 U.S.C. § 1 *et seq.*, which necessitated the trustee's obtaining court approval for Harris, Beach's representation of the debtor. Bankruptcy Rule 215(a). Harris, Beach recognized this, somewhat belatedly, and moved to obtain the required approval. An October 26, 1981 letter from James Hartman, a partner in Harris, Beach, to Paul Suter, the acting trustee in bankruptcy of B–T Productions, reflects that Harris, Beach had consulted with Mr. Suter and agreed to continue its representation of B–T Productions in both the district court and Court of Claims actions as special counsel to the debtor. Exhibit C. That letter loosely described a one-third contingent fee arrangement. On May 27, 1982, James Hartman wrote to Lloyd Relin, attorney for the trustee in bankruptcy, urging that permission be obtained from the bankruptcy court for Harris, Beach's representation of B–T Productions in the ongoing litigation. Exhibit D. That letter set forth the existing fee arrangement between Harris, Beach and its clients precise-

ly: a contingent fee of 33⅓ of the first $300,000, plus 30% of the remaining balance to a total of $2,000,000, plus 20% of any monies awarded beyond that amount. In addition, related appeals would be compensated on the basis of $80 per hour.[4] This letter was followed by another from Mr. Hartman on June 25, 1982 urging Mr. Relin to obtain court approval for Harris, Beach to continue its representation of the debtor. Exhibit E. Mr. Suter thereupon filed an application with the bankruptcy court requesting, *inter alia*, that the court approve the employment of Harris, Beach. Annexed to this application were Mr. Hartman's May 27, 1982 and June 25, 1982 letters to Mr. Relin for the purpose of informing the court of the terms of the proposed employment.

On July 7, 1982, the bankruptcy court issued an order granting the trustee's applications. The order authorized the employment of Harris, Beach as special counsel to the trustee for the purpose of prosecuting both the district court and Court of Claims actions. It provided that "the terms of the employment of [Harris, Beach] shall be as set forth in the letters of May 27, 1982 and June 25, 1982 sent by James M. Hartman ... to Lloyd H. Relin." The order also provided that payment of fees and disbursements associated with the employment of Harris, Beach would be subject to further order of the court.

The district court action ended in December, 1982 with a jury verdict unfavorable to Harris, Beach's clients. A two-year hiatus following during which Harris, Beach performed virtually no services for the debtor or the other plaintiffs. Early in 1985 Harris, Beach was again approached by Weiner, Lawrence, to pursue the tort claim against New York State in the Court of Claims. Harris, Beach claims that it negotiated a contingency fee of one-third of "everything" and appellate work at the "current rate" before agreeing to handle the Court of Claims case. Transcript 77. According to James Hartman's testimony,

---

**3.** A July 8, 1985 order by this court prescribed that sequence and proportion of distribution.

**4.** The letter noted that the agreement was obviously "somewhat ancient", since the hourly rate was far below the firm's current hourly rate.

this arrangement was negotiated with Weiner, Lawrence. According to William L. Dorr, another partner in Harris, Beach, the arrangement was agreed upon between Harris, Beach and "the Della Pietra family". Affidavit of Dorr at 6. Mr. Della Pietra denies making such an agreement at any time. Transcript 358–62. Harris, Beach does not represent that the renegotiated agreement was ever reduced to a writing.

■ From the evidence, it is possible that Harris, Beach negotiated a new fee arrangement with Weiner, Lawrence at some point. It appears less likely that Harris, Beach and its client Anthony Della Pietra agreed on a new fee arrangement.[5] But it is certain that Harris, Beach neither sought nor received any modification of its fee arrangement with the debtor as set forth in this court's July 7, 1982 order. Thus Harris, Beach is bound by that order insofar as its fees derive from property of the bankruptcy estate.[6]

The trustee also disputes Harris, Beach's inclusion of the $730,061.45 in interest recovered by the appeal in the calculation of its contingency fee. Harris, Beach argues that prejudgment interest was part of the "monies awarded" under the terms of the July 7, 1982 order and was properly included in calculating the contingency fee.

■ In reviewing the Court of Claims decision, the Appellate Division concluded that the plaintiffs were entitled to interest on the $770,000 damage award dating from the filing of their claim. *Della Pietra v. N.Y.*, 125 A.D.2d 936, 938, 510 N.Y.S.2d 334 (1986), *aff'd*, 71 N.Y.2d 792, 526 N.E.2d 1, 530 N.Y.S.2d 510 (1988). The contingency fee arrangement set forth in James Hartman's May 27, 1982 letter, incorporated by reference into the July 7, 1982 order, is silent as to interest. The testimony of the two expert witnesses tends to support the debtor's position that if interest were to be included in the base amount for calculation of the contingency fee, the written fee agreement should so state.[7] An unclear contingent fee agreement is to be read most favorably to the client. *Shaw v. Manufacturers Hanover Trust Co.*, 68 N.Y.2d 172, 174, 499 N.E.2d 864, 507 N.Y.S.2d 610 (1986).

■ Although the award of prejudgment interest by the appellate court was in effect an adjustment of the original damage award by the Court of Claims, it was in fact the fruit of Harris, Beach's appellate work, obtained under a fixed-rate fee agreement. To include the interest in calculating Harris, Beach's contingency fee would be to compensate them twice for the same product and would, as the debtor observes, increase their effective rate for the appellate work to $450.88 per hour.[8] This result would not be reasonable as required by Bankruptcy Rule 219(c), governing awards of compensation to professional persons.

An examination of the time sheets and other materials entered into evidence supports a finding that Harris, Beach provided 837 hours of service for appellate work. At the rate of $80/hour, the fixed portion

5. In this court's opinion, Harris, Beach has failed to carry its burden of showing that the renegotiated fee arrangement was fully known and understood by its client, Anthony Della Pietra. *Jacobson v. Sassower*, 66 N.Y.2d 991, 489 N.E.2d 1283, 499 N.Y.S.2d 381 (1985).

6. Harris, Beach appears to argue that it ceased representation of all the clients when it lost the district court case in 1982, and commenced new relationships, with a new fee arrangement, in 1985 when it agreed to litigate the Court of Claims action. The rule in the Second Circuit for professionals who provide service to bankrupts without obtaining court approval is strict, denying compensation for such services even under a theory of *quantum meruit. In re Am-*

*herst Mr. Anthony's Ltd.*, 63 B.R. 292, 293 (W.D. N.Y.1986). Fortunately for Harris, Beach, the July 7, 1982 order expressly approved Harris, Beach's employment in both actions, and this court finds that there was no interruption in Harris, Beach's employment on behalf of B–T Productions.

7. Testimony of Judge Wagner, Transcript 326. Testimony of David Levy, Transcript 172–73.

8. Using Harris, Beach's calculations, the $730,-061.45 interest would produce $219,018.43 in contingency fees plus $174,600 for 873 claimed hours of appellate work at $200 per hour, for a total fee against the interest of $393,618.43 (54%).

of their fee would be $66,960. However, such an hourly rate is low even for associates during the period in question, July, 1985 through December, 1988. In the absence of a firm rule in the Second Circuit, considerable case law supports the bankruptcy court's ability to adjust a professional person's fee upward where special skill, experience, and quality of representation are not reflected in the reasonableness of the hourly rate. *In the Matter of Kero–Sun, Inc.*, 59 B.R. 630 (Bankr.D.Conn. 1986); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Even Harris, Beach's adversaries in this matter agree that Mr. Hartman and his colleagues at Harris, Beach exhibited exceptional skill in bringing the difficult Court of Claims action to a successful conclusion. The fee for appellate work is therefore adjusted upward to $100,000. The contingency fee on the $770,000 Court of Claims judgment is $241,000. Disbursements of $3,012.95 are allowed.[9]

Harris, Beach's list supporting its $93,-320.31 payment to Anthony Della Pietra for disbursements, Exhibit 18, correctly includes $19,000 [10] for accounting services provided by Cortland L. Brovitz & Co., P.C. That fee was approved by this court in a May 15, 1989 order. However, the remainder of the list is problematical, since it includes unexplained entries, entries for various legal fees, entries seeming to describe expenses associated with the district court action in Buffalo, and a $10,000 "retainer" paid to Harris, Beach. Approval of any disbursement by Anthony Della Pietra of the remaining $74,320.31 is withheld pending a proper application to this court.

Harris, Beach is therefore directed to distribute, according to the terms of this court's July 8, 1985 order, the unapproved portion of the compensation it took last December, $293,618.44 plus $3,966.13, with

interest actually accrued.[11] Anthony Della Pietra is directed to turn over to the bankruptcy trustee $74,320.31 of the $93,320.31 for disbursements he received from Harris, Beach last December, pending this court's receipt and approval of an application to disburse those funds.

So ordered.

---

**9.** Disbursements of $3,966.13 labelled "9/22/83" are disallowed in the absence of an explanation as to why they are chargeable to the period in question, 1985–1988.

**10.** It is the court's understanding that Mr. Della Pietra had personally advanced a $3,600 retainer to the Brovitz firm, so that he would now

disburse $15,400 of the $19,000 to the firm and reimburse himself with the remaining $3,600.

**11.** Harris, Beach is free to claim additional fees due under renegotiated fee arrangements from any parties it chooses except the debtor.