Let the Clerk send a copy of this Report and Recommendation to the attorneys of record.

SO ORDERED.

Jan. 16, 1996.

Chaya TORNHEIM & Chaim
Tornheim, Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE CORP., Source one Mortgage Services Corp. and Five Brothers Mortgage Company Services and Securing, Inc., Defendants.

FIVE BROTHERS MORTGAGE COMPANY SERVICES and Securing, Inc., Defendant and Third–Party Plaintiff,

v.

Chris KERVANDJIAN, Mike Piork, and Northeast Property Inspector, Third–Party Defendants.

No. 96 Civ. 5258 PKL AJP.

United States District Court,
S.D. New York.

Sept. 26, 1997.

Chaya and Chaim Tornheim, New York City, pro se.

John R. Goldman, Herrick, Feinstein, LLP, New York City, for Defendants Fed. Home Loan and Source One.

Nick Filacouris, Asmenakis & Asmenakis, New York City, for Defendant Five Bros.

Catherine Kervandjian, Forest Hills, NY, pro se.

### MEMORANDUM ORDER

LEISURE, District Judge.

Plaintiffs, *pro se*, brought this action alleging seven separate claims: (1) trespass, (2) infliction of emotional distress, (3) deprivation of the reasonable value of the use of their home during the period of their alleged ouster, plus treble damages, (4) conversion of plaintiffs' personal property, (5) invasion of privacy, and (6) and (7) violations of the Fair Debt Collection Practices Act. The court referred this matter to the Honorable Andrew J. Peck, United States Magistrate Judge, for general pretrial supervision and the handling of defendant Federal Home Loan Mortgage Corp.'s ("FHLMC") and defendant Source One Mortgage Services Corp.'s ("Source One") motion for summary judgment.

On June 16, 1997, Judge Peck issued a Report and Recommendation (the "Report") advising this Court to grant the defendants' motion for summary judgment but to deny their request for sanctions and attorneys' fees. Judge Peck *sua sponte* recommended granting summary judgment in favor of defendant Five Brothers Mortgage Company Services and Securing, Inc. ("Five Brothers"), which also would moot Five Brothers' claim against third-party defendants.

Plaintiffs have submitted objections to the Report. The Court has reviewed Judge Peck's Report and made a *de novo* determination, as required by 28 U.S.C. § 636(b)(1), that the Report's conclusions are legally correct and proper. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980) ("[Section 636(b)(1) ] permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations.") In addition, the Court has considered plaintiffs' objections and finds them to be without merit. The Court therefore adopts the Report, subject to the clarifications offered *infra.*

As the relevant facts of the instant case and the appropriate standard for summary judgment are set forth at length in the Report, the Court need not present them here. The Court notes that it grants summary judgment on plaintiffs' trespass claim not because plaintiffs are estopped from bringing the trespass claim, as the Report advised, but because they are unable to demonstrate a genuine issue of material fact as to a necessary element of the cause of action.

■ Under New York law, which indisputably applies to the instant case:

Trespass is the interference with a person's right to possession of real property either by an unlawful act or by a lawful act performed in an unlawful manner. The act must be intentional and the damages a direct consequence of the defendant's act.

*Annutto v. Town of Herkimer,* 56 Misc.2d 186, 189, 288 N.Y.S.2d 79, 84 (N.Y.Sup.1968)(citing 87 C.J.S. Trespass § 4). Plaintiffs have failed to satisfy their burden of showing that there exists a genu-

ine issue of material fact as to the element of damages caused as a result of the alleged trespass. Plaintiffs not only have offered no evidence showing damages caused by the alleged trespass to their real property, but affirmatively admit, "We are not seeking to recover damages done to the house." Plaintiffs' Declaration in Opposition to Defendants' Motion for Summary Judgment, at ¶ 6. As plaintiffs offer no evidence to satisfy a necessary element of their trespass claim, it is appropriate to grant summary judgment on this claim in favor of defendants.

■ The Court also notes that it considers plaintiffs' claim for invasion of privacy be considered time-barred, as recommended by Magistrate Judge Peck. In a footnote, the Report states, "The Tornheims' bankruptcy filing did not toll the statute of limitations for purposes of actions brought by the Tornheims, but rather only for actions brought against them." *See* Report at 286, fn. 5. However, pursuant to the § 108(a) of the Bankruptcy Code:

If applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a).

The Report notes that plaintiffs' claim for invasion of privacy must be construed as a claim under New York Civil Rights Law § 51, and that the applicable limitations period is one year. *See* Report at 285–86 (citing NYCPLR § 215(3).) The latest alleged break-in having occurred in August of 1993, *see* Report at 10, plaintiffs normally would have had until August of 1994 to file a complaint alleging invasion of privacy. *See* CPLR § 215(3). However, the Tornheims' filing for voluntary bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code tolled the statute of limitations. *See* 11 U.S.C. § 108(a). Since their petition was filed on January 4, 1994, *see* Report at 283, plaintiffs had until January 4, 1996, to file their complaint alleging invasion of privacy. *See* 11 U.S.C. § 108(a).[1] As their initial Complaint in the instant case was not filed until July 15, 1996, plaintiffs' claim for invasion of privacy is time-barred.

## CONCLUSION

For the reasons stated in the Report, plaintiffs' claims against the defendants and third-party plaintiffs' claims against third-party defendants are HEREBY DISMISSED.

## SO ORDERED.

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

To the Honorable Peter K. Leisure, United States District Judge:

Defendants entered plaintiffs' home, on which defendant Federal Home Loan Mortgage Corp. ("FHLMC") held the mortgage, to protect FHLMC's interest in the property. Some three years later, plaintiffs sued for, *inter alia,* trespass, conversion, invasion of privacy and infliction of emotional distress. Defendants FHLMC and Source One Mortgage Services Corp. ("Source One") (FHLMC and Source One are collectively referred to as FHLMC) have moved for summary judgment. For the reasons set forth below, because all of the Tornheims' claims fail to state a claim or are barred by the doctrine of collateral estoppel or the applicable statute of limitations, the Court recommends that all defendants be granted summary judgment.

### FACTS

Plaintiffs Chaim and Chaya Tornheim, husband and wife, defaulted on a mortgage held by defendant FHLMC on plaintiffs' home at 2027 New York Avenue, Brooklyn, New York (the "premises"). (FHLMC 3(g) ¶¶ 1–3; *see* Pls.' 3(g).) In February 1993, FHLMC commenced an action to foreclose the mortgage. (FHLMC 3(g) ¶ 3; see Pls.'

---

**1.** Under § 108(a), the action must be commenced before "two years after the order for relief." In a voluntary bankruptcy case, the "or-der for relief" is the filing of the petition commencing the bankruptcy case. *See* 11 U.S.C.A. § 102(6) and revision notes that follow.

3(g).) Source One, on behalf of FHLMC, requested Five Brothers Mortgage Company Services & Securing Inc. ("Five Brothers") to inspect and monitor the premises as necessary to protect it from harm during the foreclosure action. (FHLMC 3(g) ¶ 4; *see* Pls.' 3(g).)

The Tornheims allege that Five Brothers conducted an inspection of the premises on July 19, 1993 in order to determine its occupancy status, and that although the Tornheims still occupied the premises, Five Brothers replaced the locks and shut the utilities. (Am.Cplt.¶ 15.) The Tornheims also allege that Five Brothers destroyed all of plaintiffs' personal possessions. (Am.Cplt. ¶ 39.) The Tornheims allege that similar break-ins and lock replacements took place on July 26, 1993 and in mid-August 1993, resulting in their illegal ejection from the premises. (Am. Cplt. ¶¶ 17, 19.)

The Tornheims filed the instant action on July 15, 1996, and filed an amended complaint on September 7, 1996. Their Amended Complaint alleges seven separate claims: (1) trespass; (2) infliction of emotional distress; (3) an action for the reasonable value of the use of the premises during the period of the Tornheims' ouster, plus treble damages; (4) conversion of plaintiffs' personal property; (5) invasion of privacy; and both (6) and (7) for violations of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiffs have voluntarily withdrawn the sixth and seventh claims under the FDCPA. (*See* Pls.' Br. at 2 ("As is set forth in our declaration we are willing to drop the claims asserted under the Fair Debt Collection Act, thus, there is no need to discuss the applicability of the act."); Tornheim Aff. ¶ 32.) The Tornheims also have dropped their claims for damages done to the house. (*See* Tornheim Aff. ¶ 6 ("We are not seeking to recover damages done to the house."); Pls.' 3(g) ¶ 1 ("Claims to physical damage to the real property are not at issue herein"), ¶ 9.)

### PRIOR BANKRUPTCY COURT PROCEEDINGS

On January 4, 1994, the Tornheims filed a voluntary bankruptcy petition pursuant to Chapter 11. (FHLMC 3(g) ¶ 6; *see* Pls.' 3(g); Goldman Aff. Ex. B: Tornheim Bankruptcy Petition.) On March 14, 1994, FHLMC filed a motion to vacate the automatic stay in order to continue the foreclosure action. (FHLMC 3(g) ¶ 8.) On March 25, 1994, the Tornheims objected to that motion on the basis that, inter alia: (1) the Tornheims' lack of equity in the premises resulted from its devaluation caused by defendants' break-ins and damage done by defendants to the premises, and (2) the alleged wrongdoing, including the break-ins and damage to the Tornheims' personal and real property, constituted grounds to equitably subordinate FHLMC's claim. (*See* FHLMC 3(g) ¶ 8; Goldman Aff. Ex. C: Objections of Joint Debtors at p. 2; *see* infra n. 8.) Thus, the Tornheims' present claims alleging trespass, ouster of the Tornheims, and property damage were in issue before the Bankruptcy Court:

11. ... Source One hired a "goon squad" to *illegally oust* us [the Tornheims] from legal possession to the premises which is our homestead....

12. In July, 1993 while we were in legal possession of the premises, an unknown party arrived changed all the locks to our homestead ... and informed our neighbors that they have seized the house for the bank.

13. Subsequent to restoring our locks, the goon squad came again, and again took the law into their own hands, but this time all *of our belongings and possessions were sabotaged.*

14. We are a young family ... and this unwarranted scene aside of the physical damages resulting from the *illegal trespass* and break ins, has started to take a toll on the family as a whole.

(Goldman Aff. Ex. C: Objections of Joint Debtors, ¶¶ 11–14, footnotes omitted, emphasis added.)[1]

On June 14, 1994, an evidentiary hearing was held before Bankruptcy Judge Stuart M.

---

1. At his deposition in this case, Mr. Tornheim conceded that in the bankruptcy proceeding he raised all of the issues raised in this case. (See Goldman Aff. Ex. O: Tornheim Dep. at 56–57, 74–81.)

Bernstein. (FHLMC 3(g) ¶ 9.) Following the hearing, Judge Bernstein found as follows:

Before concluding, the Court feels compelled to comment upon Debtors' contention that the mortgagee ousted them from possession. The evidence indicated that at the time of the July 1993 inspection, the Debtors had not vacated the premises. Thereafter, in August 1993, when the mortgagee's agent returned to the premises, he found the utilities back on, the locks changed, and no damage in the home that one would expect to find if it were vacant and used by transients. This suggests, as Mr. Tornheim testified, that the property was not vacant.

On the other hand, the Court finds Mr. Tornheim's testimony on this matter perplexing. Although he was ousted from the house, he did not report it to the police. Although he claims that the mortgagee caused $45,000 in damages in August 1993, he did not make a claim under his homeowners policy that he claimed was in force until the end of 1993. And although the agent left a sticker on the house which advised the owner to get in touch with Five Brothers to get back the key, he apparently did not do so.

In this regard, the Court discounts the testimony that he contacted the mortgagee, but gave up because the attorney for the mortgagee told him he couldn't have the key unless he paid the mortgage, or at least the arrears.

*The Court concludes,* having observed Mr. Tornheim testify, that he was ambivalent about this property, and *that the Debtors abandoned it or at least failed to make reasonable efforts to get it back, that the mortgagee did not do the damage that they claim,* and that it is in the best interest of the secured creditor to continue with the foreclosure.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

(Goldman Aff. Ex. D: 6/14/97 Hearing Tr. at 45–47, emphasis added.)

On that same day, Judge Bernstein lifted the stay. (FHLMC 3(g) ¶ 11; Goldman Aff. Ex. E: Order to Lift and Vacate Automatic Stay.) Plaintiffs appealed to the District Court, and on April 5, 1996, Judge Allen Schwartz of this Court affirmed. (FHLMC 3(g) ¶ 13; Goldman Aff. Ex. M: Order Dated April 5, 1996.) The Tornheims' appeal of Judge Schwartz' decision was dismissed by the Second Circuit. (Order dated Feb. 20, 1997.)

## ANALYSIS

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991); *Hernandez v. New York City Law Dep't Corp. Counsel,* 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.); *Burger v. Litton Indus., Inc.,* 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), *report & rec. adopted by* 1996 WL 609421 (S.D.N.Y. Oct.22, 1996). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, defendants. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994); *Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6; *Burger v. Litton,* 1996 WL 421449 at *7.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby,* 477 U.S. at 255,

106 S.Ct. at 2513; *see also Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223; *Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6. The Court draws all inferences in favor of the nonmoving party—here, plaintiffs—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g. Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6; *Burger v. Litton,* 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37; *see also Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6.[2]

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at *3 (S.D.N.Y. March 24, 1997) (Peck, M.J.). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see also, e.g., Knight,* 804 F.2d at 11–12; *Shaw v.*

*City of New York,* 95 Civ. 9325, 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Ruiz v. Selsky,* 1997 WL 137448 at *3.

## I. DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED BECAUSE ALL CLAIMS EITHER FAIL TO STATE A CLAIM OR ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL OR THE APPLICABLE STATUTE OF LIMITATIONS

### A. Plaintiffs' Invasion of Privacy Claim is Time–Barred

The Tornheims seem to be making a claim for common law invasion of privacy. In New York, however, "[t]here is no common-law right to privacy. In New York, the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law.' " *Dana v. Oak Park Marina, Inc.,* 230 A.D.2d 204, 660 N.Y.S.2d 906, 908 (4th Dep't 1997); *see also, e.g., Howell v. New York Post Co.,* 81 N.Y.2d 115, 123, 596 N.Y.S.2d 350, 354, 612 N.E.2d 699, 703 (1993); *Hampton v. Guare,* 195 A.D.2d 366, 366, 600 N.Y.S.2d 57, 58 (1st Dep't), *appeal denied mem.,* 82 N.Y.2d 659, 605 N.Y.S.2d 5, 625 N.E.2d 590 (1993).

The Court need not address whether the facts of this case state a claim under N.Y. Civil Rights Law § 51[3] because such a claim is time-barred under the applicable one year statute of limitations.[4] *See* CPLR § 215(3) ("The following actions shall be commenced within one year: ... a violation of the right of privacy under section fifty-one of the civil rights law"); *see also, e.g., Russo v. Huntington Town House, Inc.,* 184 A.D.2d 627, 627–28, 584 N.Y.S.2d 883, 883 (2d Dep't 1992); *Tomasino v. William Morrow & Co.,* 174 A.D.2d 734, 735, 571 N.Y.S.2d 571, 572 (2d Dep't 1991); *Castel v. Jean Norihiko Sherlock Corp.,* 159 A.D.2d 233, 233, 552

---

**2.** The Tornheims, in their brief, have requested a reopening of discovery at this late date. (Pls.' Br. at 2.) The Tornheims received ample opportunity for discovery, but chose not to take advantage of it. Moreover, in light of the bases for the Court's decision, further discovery could not affect the Court's recommendation. Therefore, the Tornheims' discovery request is denied.

**3.** "Section 50 provides criminal penalties and section 51 [creates] a private right of action for damages and injunctive relief." *Howell v. New York Post Co.,* 81 N.Y.2d at 123, 596 N.Y.S.2d at 354, 612 N.E.2d at 703.

**4.** The latest conduct alleged on the part of Defendants took place in August of 1993. The instant claim was not filed until July 15, 1996. Thus, nearly three years elapsed.

N.Y.S.2d 212, 213 (1st Dep't 1990); *Walden v. F.W. Woolworth Co.*, 138 A.D.2d 261, 262, 525 N.Y.S.2d 224, 225 (1st Dep't), *appeal dismissed mem.*, 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46 (1988).[5]

### B. *Plaintiffs' Infliction of Emotional Distress Claim Either Is Time–Barred or Fails to State a Claim*

It is unclear whether the Tornheims are bringing a claim for intentional or negligent infliction of emotional distress.

■ If the Tornheims' claim is for the *intentional* infliction of emotional distress, it is time-barred under the applicable one year statute of limitations. *See, e.g., Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F.Supp. 450, 455 (S.D.N.Y.1997) (under CPLR § 215(3), " '[i]t is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations.' "); *Santan–Morris v. New York Univ. Med. Center*, 96 Civ. 0621, 1996 WL 709577 at *2 (S.D.N.Y. Dec.10, 1996); *Neufeld v. Neufeld*, 910 F.Supp. 977, 981 (S.D.N.Y.1996); *Ornstein v. Pakistan Int'l Airlines Corp.*, 888 F.Supp. 28, 31 n. 11 (S.D.N.Y.1995); *Rosado v. City of New York*, 713 F.Supp. 124, 125 n. 2 (S.D.N.Y.1989); *Koster v. Chase Manhattan Bank, N.A.*, 609 F.Supp. 1191, 1197–98 (S.D.N.Y.1985).

■ If the Tornheims are bringing a claim not for intentional but for *negligent* infliction of emotional distress, they have failed to state such a claim.[6] The Second Circuit has recently explained:

Under New York law, a plaintiff may establish such a claim [for negligent infliction of emotional distress] in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory."

A plaintiff may recover for a purely emotional injury under the "bystander" theory [also known as the "zone of danger rule," *see, e.g., Bovsun v. Sanperi*, 61 N.Y.2d 219, 228, 473 N.Y.S.2d 357, 361, 461 N.E.2d 843, 846 (1984) ] when: (1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family....

Under the "direct duty" theory a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety.... The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society.

*Mortise v. United States*, 102 F.3d 693, 696 (2d Cir.1996); *accord, Muhlrad v. Mitchell*, 96 Civ. 3658, 1997 WL 182614 at *9 (S.D.N.Y. Apr.14, 1997)[7]

The Tornheims have failed to state a claim under either of these theories because they were never in a situation involving any likelihood of imminent physical harm. *See, e.g., Mortise v. United States*, 102 F.3d at 694–96 (where plaintiffs who accidentally came upon a National Guard wargame exercise were surrounded by fully armed men who pointed

---

**5.** The Tornheims' bankruptcy filing did not toll the statute of limitations for purposes of actions brought by the Tornheims; but rather only for actions brought against them. *See, e.g., Klein v. Axelrod*, 81 A.D.2d 935, 936, 439 N.Y.S.2d 510, 512 (3d Dep't), *aff'd*, 54 N.Y.2d 818, 443 N.Y.S.2d 653, 427 N.E.2d 950 (1981).

**6.** Claims for negligent infliction of emotional distress are governed by the longer, three-year statute of limitations. *See* CPLR § 214; *see also, e.g., Augeri v. Roman Catholic Diocese of Brooklyn*, 225 A.D.2d 1105, 1106, 639 N.Y.S.2d 640, 641 (4th Dep't 1996); *O'Hearn v. Spence–Chapin Services to Families & Children, Inc.*, 929 F.Supp. 136, 142 (S.D.N.Y.1996); *Sundaram v. Brookhaven Nat'l Lab. Associated Univs., Inc.*,

CV–94–2330, 1996 WL 563829 at *5 (E.D.N.Y. March 11, 1996); *Kapp v. Naughton*, No. 90–591, 1990 WL 181179 at *2 (W.D.N.Y. Nov. 21, 1990).

**7.** A few very limited exceptions to these general rules exist. "The first is the minority rule permitting recovery for emotional harm resulting from negligent transmission ... of a message announcing death.... The second exception permits recovery for emotional harm to a close relative resulting from negligent mishandling of a corpse...." *Johnson v. State of New York*, 37 N.Y.2d 378, 381–82, 372 N.Y.S.2d 638, 641–42, 334 N.E.2d 590, 592–93 (1975). The conduct involved in the instant case clearly does not fit within either of these exceptions.

their guns at them, told them that they were prisoners, and fired blanks at plaintiff-husband, plaintiff-wife could not recover because "her own physical safety was never threatened and she did not see [her husband] suffer a previous physical injury"); *Iannotti v. City of Amsterdam*, 225 A.D.2d 990, 990–91, 639 N.Y.S.2d 537, 538 (3d Dep't 1996) (claim based upon plaintiffs' basement filling with sewage and plaintiff wading through it dismissed because physical harm was too "speculative"); *Brown v. New York City Health & Hosps. Corp.*, 225 A.D.2d 36, 43, 648 N.Y.S.2d 880, 885 (2d Dep't 1996); ("[i]t is well settled that the circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her physical safety.") (internal quotations omitted); *Glendora v. Gallicano*, 206 A.D.2d 456, 456, 615 N.Y.S.2d 45, 46 (2d Dep't 1994) (plaintiff was not "unreasonably endanger[ed]" in case involving breach of "warranty of habitability"); *Gonzalez v. New York City Hous. Auth.*, 181 A.D.2d 440, 440, 580 N.Y.S.2d 760, 761 (1st Dep't 1992) (plaintiff who had been in rear of elevator with daughter during accident resulting in daughter's death "was not in imminent danger of physical harm . . . . ").

### C. Plaintiffs' Claims For Conversion, Trespass and the Reasonable Value of the Use of the Premises During Their Ouster Are Barred by the Doctrine of Collateral Estoppel

■ "The doctrine of collateral estoppel [or issue preclusion] 'precludes a party from relitigating in a subsequent action or pro-

ceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.' " *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir.1995) (quoting *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). "The requirements for collateral estoppel under New York law are that the issue be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue in the prior proceeding." *Long Island Lighting Co. v. IMO Indus. Inc.*, 6 F.3d 876, 885 (2d Cir.1993); *see also, e.g.*, *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir.1996); *Fletcher v. Atex, Inc.*, 68 F.3d at 1457; *Ryan v. New York Tel. Co.*, 62 N.Y.2d at 500, 478 N.Y.S.2d at 827–28, 467 N.E.2d at 490–91.

The bases on which the Tornheims opposed the motion to vacate the automatic stay before the Bankruptcy Court brought into issue the alleged trespass, ouster and property damage claims. After a thorough and fair evidentiary hearing, Judge Bernstein made several findings. As to the ouster, Judge Bernstein found that "the Debtors [the Tornheims] abandoned [the premises] or at least failed to make reasonable efforts to get it back." (Goldman Aff. Ex. D: 6/14/94 Hearing Tr. at 47.) As to the property damage, Judge Bernstein found that "the mortgagee did not do the damage that they claim." (*Id.*) Therefore, the Tornheims' claims for trespass, conversion and for the reasonable value of the use of the premises during the period of their ouster, all of which are based upon either the alleged ouster or property damage,[8] are barred by the doctrine of collateral estoppel.

---

**8.** "Interference with [or damage to] a person's property constitutes a trespass, while a denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion.' " *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415, 448 N.E.2d 1324, 1326 (1983) (citations omitted); *see also, e.g.*, *Vigilant Ins. Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347, 660 N.E.2d 1121, 1126 (1995) (conversion); *In re Chateaugay Corp. (Frito–Lay, Inc. v. LTV Steel Co.)*, 10 F.3d 944, 957

(2d Cir.1993) (conversion); *Allen v. Murray House Owners Corp.*, 174 A.D.2d 400, 403, 571 N.Y.S.2d 698, 701 (1st Dep't) (conversion), *appeal denied mem.*, 78 N.Y.2d 860, 576 N.Y.S.2d 218, 582 N.E.2d 601 (1991); *Della Pietra v. State of New York*, 125 A.D.2d 936, 937–38, 510 N.Y.S.2d 334, 336 (4th Dep't 1986) (conversion), *aff'd on other grounds*, 71 N.Y.2d 792, 530 N.Y.S.2d 510, 526 N.E.2d 1 (1988); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F.Supp. 1273, 1280–81 (E.D.N.Y.1995) ("In New York, the tort of conversion consists of the unauthorized exercise of dominion over the property of

## II. *DEFENDANTS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES IS DENIED*

■ Defendant FHLMC moves for sanctions for the Tornheims' assertion of claims for violation of the FDCPA (FHLMC Br. at 23 n. 6; FHLMC Reply Br. at 8, 18–19.) In response to the FHLMC's opening brief, the Tornheims voluntarily withdrew their FDCPA claims. (*See* Pls.' Br. at 2; Tornheims Aff. ¶ 32.) Since defendant FHLMC has not followed the proper procedures under Rule 11, Fed.R.Civ.P., the Court denies the sanction motion without addressing its merits.[9]

■ FHLMC also seeks attorneys' fees under the FDCPA, which provides for attorneys fees for the bringing of a claim for violation of the FDCPA "in bad faith or for the purpose of harassment." 15 U.S.C. § 1692k(a)(3). FHLMC has failed to demonstrate conduct on the part of the Tornheims that clearly constitutes bad faith or harassment so as to allow an award of attorneys' fees under the FDCPA. Thus, FHLMC's motion for sanctions and attorneys' fees should be denied.

### CONCLUSION

For the reasons set forth above, I recommend that defendants FHLMC's and Source One's summary judgment motion be granted, but that defendants' request for sanctions and attorneys' fees be denied. Although defendant Five Brothers did not move for summary judgment, it is entitled to summary judgment for the same reasons as FHLMC, and I therefore *sua sponte* recommend granting summary judgment to Five Broth-

---

another to the exclusion of the owner's right, or the unauthorized use of that property.... A trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another."); *Tinker v. Abrams*, 640 F.Supp. 229, 232 (S.D.N.Y.1986) (conversion and trespass).

The Tornheims argue that Judge Bernstein did not rule on their allegations of damage to their personal property, but rather was referring only to their real property, which is not at issue in the instant case, when he stated "the mortgagee did not do the damage that [the Tornheims] claim." (Goldman Aff. Ex. D: 6/14/94 Hearing Tr. at 47.) However, the Tornheims clearly alleged damage to their personal property in their Objections and offered evidence on this topic. (Goldman Aff. Ex. C: Objections of Joint Debtors, ¶ 13 ("all of our belongings and possessions were sabotaged"); Goldman Aff. Ex. D: 6/14/94 Hearing Tr. at 31 (Mr. Tornheim testified that "a lot of damage was caused to the furniture and belongings, certain things were just taken away, I guess ...."); *see also id.* at 36, 48.) Furthermore, this allegation was at issue with respect to the equitable subordination argument. *See* 11 U.S.C. § 510(c) ("the court may under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest"); *see also id.*, Advisory Committee Note ("To date, under existing law, a claim is generally subordinated only if holder of such claim is guilty of inequitable conduct ...."); *see also, e.g., In re Poughkeepsie Hotel Assoc. Joint Venture*, 132 B.R. 287, 292–93 (Bkrtcy.S.D.N.Y.1991) (debtor may raise equitable subordination as a defense to a request to lift automatic stay). Thus, it is apparent that Judge Bernstein necessarily found that defendants did not sabotage the Tornheims' personal property and was indeed referring in his conclusions to damage to their personal property, as well as their real property. Since Judge Bernstein found that the defendants did not damage the Tornheims' real or personal property, their claims for trespass and conversion are barred by the doctrine of collateral estoppel.

9. The Advisory Committee Notes following Rule 11 explain:

The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not, however, to be filed until at least 21 days ... after being served. If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position ...

1993 Advisory Committee Note to Fed.R.Civ.P. 11.

FHLMC's sanctions request is included within their summary judgment motion papers, rather than existing as an independent motion as required by Rule 11. FHLMC thus did not allow the Tornheims the "safe harbor" called for by the Rule. Since the Tornheims withdrew their FDCPA claims in their response brief, it is apparent that had FHLMC afforded them the opportunity, the Tornheims would have taken advantage of the "safe harbor" provision of Rule 11.

ers. Doing so moots Five Brothers' claim against the third-party defendants.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Peter K. Leisure, 500 Pearl Street, Room 1910, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Leisure. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), cert. denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

June 16, 1997.